Opinion by Judge McKeown; Partial Concurrence and Partial Dissent by Judge ZILLY.
McKEOWN, Circuit Judge:
Petitioner George Souliotes, a California prisoner, is currently serving a life sentence for three murders by arson that he claims he did not commit. Souliotes seeks to prove his innocence based on the results of new fire testing methods that he claims could have only been reasonably discovered in 2005. We are called upon to decide whether his petition for writ of habeas corpus was timely filed under the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), Pub.L. No. 104-132, 110 Stat. 1214, and, if so, which of his claims for relief are cognizable.
The district court dismissed Souliotes’s habeas petition as untimely because it was filed five days after AEDPA’s one-year limitations period set forth at 28 U.S.C. § 2244(d)(1)(A). However, in doing so, the district court rejected Souliotes’s invocation of the limitations period at § 2244(d)(1)(D) based on the date on which the factual predicate of his innocence claim could have been reasonably discovered. Contrary to the district court’s approach, § 2244(d)(1)(D) does not require that petitioners exercise the maximum diligence possible in uncovering the factual bases of their claims, but only “due” or “reasonable” diligence. Thus, we reverse the district court’s dismissal of the habeas petition and remand for expedited proceedings to determine when an inmate in Souliotes’s position could have discovered the new evidence with reasonable diligence.
Because we also hold that § 2244(d)(1)(D) applies only to Souliotes’s innocence claim, and not his claims for relief that are not based on new evidence, we must also address his claims for equitable tolling and application of the “actual innocence gateway” to the AEDPA statute of limitations. See Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). We affirm the denial of equitable tolling because the failure of Souliotes’s attorney to note the correct date on which Souliotes’s state court decision became final is not an “extraordinary circumstance,” but rather an instance of ordinary negligence. Holland v. Florida, — U.S.-, 130 S.Ct. 2549, 2564, 177 L.Ed.2d 130 (2010). Our recent precedent that AED-PA does not include an innocence gateway *1176 in its statute of limitations forecloses Souliotes’s gateway claim. See Lee v. Lampert, 610 F.3d 1125, 1128-31 (9th Cir.2010). As a result, Souliotes’s additional claims for relief are time-barred.
Background
Souliotes challenges his May 2000 conviction for arson and three counts of murder with special circumstances based on newly discovered evidence derived from scientific methods that were not available at the time of trial. Souliotes alleges that new expert testimony refutes the key evidence the prosecution used to link him to the residential fire that killed three people. In addition to claiming actual innocence, Souliotes presents claims of ineffective assistance of counsel, violation of the Vienna Convention, and juror misconduct.
Souliotes was tried twice. At the first trial, Souliotes’s counsel presented evidence, including testimony from fourteen witnesses, to support the theory that the fire was an accident and undermine the credibility of the prosecution’s witnesses and the prosecution’s “financial motive” theory. The first jury hung. At the second trial, Souliotes was represented by the same attorney, who this time put on only one witness, an individual who had served as a prosecution witness at the first trial. Souliotes was convicted on all charges and sentenced to life without the possibility of parole.
During Souliotes’s second trial, the prosecution relied heavily on scientific evidence indicating that a liquid was used to ignite the fire. After the fire, this liquid left residues of medium petroleum distillates (“MPDs”) at the scene. A prosecution witness testified that Souliotes’s shoes also contained MPDs.[1]
The prosecution characterized the MPDs on Souliotes’s shoes as “the most conclusive scientific evidence.” “What set the fire?” the prosecution asked at closing argument. “Medium petroleum distillates.” The prosecution concluded:
[T]his was an arson. From that flows the rest. From that the finger of guilt points to the defendant. Doesn’t point to the one-armed man. It points to George Souliotes because he’s the one. The shoes tell the tale. He summoned that demon that morning. He poured that liquid on the ground and he brought that demon to life and that demon took Michelle, Daniel, and Amanda. He is responsible, he is guilty, and justice accordingly demands that he be found that way.
In 1997, before Souliotes’s trials, John Lentini, a certified criminalist, chemist, and arson investigator, was asked to analyze twenty-one samples of physical evidence. Lentini was asked to determine if any of the samples contained residues of ignitable liquids. Lentini tested the samples and analyzed the results, applying the national standards in effect at the time for gas chromatography-mass spectrometry (“GC-MS”). The test data provided a “chemical fingerprint” of measured chemical compounds, but the method only identified a chemical as being within a class of chemicals, and it did not distinguish between different chemical compounds in the same class.
In his original 1997 testing, Lentini found that four items all exhibited the presence of MPDs. Items 3 and 5 were carpet and carpet foam collected from the fire scene, and items 16 and 17 were a pair of Souliotes’s shoes. At the time, Lentini concluded that “the MPD found on the shoes could not be excluded as having *1177 come from the same source of MPD found on items 3 and 5, collected from the scene of the fire.” Lentini was not called as a witness in either of Souliotes’s trials.
In 2005, Souliotes’s sister contacted Lentini. Since 1997, Lentini had spent a considerable amount of time researching methods by which distinctions could be made within chemical compound classes, such as MPDs. Lentini reexamined the MPD evidence and found that “[b]y removing what I now know to be superfluous data recorded by the GC-MS data, ... it was possible to make distinctions among the separate compounds within the chemical class of MPD.” Specifically, he “found that there were, in fact, chemical differences between the MPDs found on items 3 and 5 (from the fire scene) and items 16 and 17 (the defendant’s shoes).” On September 21, 2005, he wrote a letter to Souliotes’s sister and informed her of these new findings.
In December 2005, Lentini prepared a report detailing his test methods and results and concluding that:
[T]he residue on the shoes and the residue in the scene could not have had a common origin. There is thus no chemical ‘match’ between the ignitable liquid found at the scene of the fire and the residue in defendant’s shoes.
Shortly after, Lentini signed a declaration, which Souliotes attached to his federal habeas petition filed on May 30, 2006.[2]
However, Souliotes’s petition was late. Based on a docket entry at the California Court of Appeal, Souliotes’s counsel believed that only 324 days of the AEDPA one-year limitations period after the entry of a final judgment had elapsed and that he thus had forty-one days to file his habeas petition. See 28 U.S.C. § 2244(d)(1)(A). But Souliotes actually only had thirty-six days left and filed his petition five days after it was due.
The state moved to dismiss Souliotes’s petition as time-barred, and Souliotes raised three arguments in opposition to dismissal. First, Souliotes argued that his petition was entitled to additional tolling under § 2244(d)(1)(D) based on the newly discovered evidence of his innocence. Second, Souliotes sought equitable tolling based on exceptional circumstances that caused him to be late. Third, Souliotes sought to invoke the innocence gateway under Schlup, arguing that his actual innocence overcame the AEDPA limitations period. The district court dismissed Souliotes’s petition as time-barred, and this appeal followed.
Analysis
I. Section 2244(d)(1)(D)
We consider first whether Souliotes’s actual innocence claim was timely presented to the district court. Section 2244(d)(1) provides:
A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right *1178 has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
Souliotes argues that he is entitled to the triggering date at § 2244(d)(1)(D) — discovery of the factual predicate of his actual innocence claim on September 21, 2005, the date of Lentini’s letter to his sister.
The district court rejected Souliotes’s contention:
Petitioner does not claim that any obstacle prevented him from asking Lentini to re-test the evidence or seeking another opinion about the evidence sooner ... and [the fact] that Petitioner did not uncover the facts until September 2005 does not make them undiscoverable.
The district court applied an incorrect diligence standard. As our sister circuits have recognized, § 2244(d)(1)(D) does not demand the maximum diligence possible, but only “due” or “reasonable” diligence. See Starns v. Andrews, 524 F.3d 612, 618-19 (5th Cir.2008); Wilson v. Beard, 426 F.3d 653, 660-62 (3d Cir.2005); Moore v. Knight, 368 F.3d 936, 939-40 (7th Cir.2004); Wims v. United States, 225 F.3d 186, 190 n. 4 (2d Cir.2000).
Souliotes need not show that some obstacle made the information in Lentini’s declaration previously “undiscoverable” or that he could not have obtained at an earlier date through any means conceivable. Rather, he need establish only when a reasonable investigation would have uncovered the facts he alleges are newly discovered. See Moore, 368 F.3d at 939-40.
In addition, § 2244(d)(1)(D)’s due diligence requirement is an objective standard that considers the petitioner’s specific situation. See Moore, 368 F.3d at 940 (noting that “a due diligence inquiry should take into account that prisoners are limited by their physical confinement”); Easterwood v. Champion, 213 F.3d 1321, 1323 (10th Cir.2000) (holding that, under § 2244(d)(1)(D), “a case is discoverable by ‘due diligence’ on the date the opinion became accessible in the prison law library, not the date the opinion was issued.”); see also Johnson v. Dretke, 442 F.3d 901, 907-08 (5th Cir.2006) (interpreting the nearly identical due diligence language in 28 U.S.C. § 2244(b)(2)(B)). The proper focus of the inquiry is therefore when Souliotes himself would have learned of the new evidence had he exercised reasonable care.
Souliotes asserts that he could not have previously discovered the existence of new scientific techniques for distinguishing between MPD chemical compounds through any reasonable investigation, such as monitoring court decisions or scientific literature relating to fire science. According to Lentini, his 2005 findings used scientific techniques that were not made widely public until 2006, when Lentini’s book was published. The Innocence Project similarly contends in its amicus brief that “as of 2005, when Lentini re-examined his earlier findings, the ... technical testing standard for MPDs used by Lentini for the 1997 trial had not changed in relevant part, making Lentini’s re-testing of the samples for intra-class distinctions a true innovation.”
The state rejoins that:
Souliotes knew the factual basis for the claim at the time he was convicted: that is, if Souliotes did not set the fire, he knew the chemicals on his shoes did not come from the MPDs tested at the fire scene. Knowing this, he should have sought assistance in developing his claim before 2005.
The state’s circular argument points out the obvious — that an innocent defendant is *1179 aware of his innocence from the time he is convicted — and it is not helpful. Rather, the application of § 2244(d)(1)(D) turns on when Souliotes could have reasonably discovered the evidence based on the new developments in testing methods, which Souliotes alleges were not widely known prior to 2005 and not published until 2006.
We conclude that an evidentiary hearing is necessary to determine when the scientific techniques used by Lentini in 2005 to discriminate among the MPD compounds were developed, and when such information would have become available to an inmate like Souliotes. Accordingly, we reverse the district court’s dismissal of Souliotes’s habeas petition, and we remand for an expedited evidentiary hearing to determine when an inmate in Souliotes’s position could have discovered the new MPD evidence with due diligence.[3]
We next consider whether the triggering date at § 2244(d)(1)(D) applies to all the claims Souliotes presents in his habeas petition, or to his actual innocence claim alone. We address this issue because Lentini’s 2005 findings do not form the factual predicate of Souliotes’s claims of ineffective assistance of counsel, violation of the Vienna Convention, or juror misconduct, and those claims were presented to the district court more than one year after Souliotes’s conviction became final.
Souliotes contends that the triggering date at § 2244(d)(1)(D) should apply to all his claims, including the claims that are not based on newly discovered evidence. Two of our sister circuits have split over this issue. In Walker v. Crosby, the Eleventh Circuit held that “[t]he statute of limitations in § 2244(d)(1)(D) applies to the application as a whole; individual claims within an application cannot be reviewed separately for timeliness.” 341 F.3d 1240, 1245 (11th Cir.2003). Emphasizing the reference in § 2244(d)(1) to “an application for a writ of habeas corpus,” the court reasoned that “[t]he statute directs the court to look at whether the ‘application’ is timely, not whether the individual ‘claims’ within the application are timely.” Id. at 1243 (emphasis added).
The Third Circuit rejected this position in Fielder v. Varner, 379 F.3d 113 (3d Cir.2004) (Alito, J.), holding instead that § 2244(d)(1) applies on a claim-by-claim basis. Rather than focus solely on the term “application” in § 2244(d)(1), the court looked to the text of § 2244(d)(1)(D), which refers to “the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.” 28 U.S.C. § 2244(d)(1)(D) (emphasis added). As the court explained, “[a]pplying this language in a case [like Souliotes’s] in which multiple claims are presented poses a problem.” Fielder, 379 F.3d at 117-18.
The reference to “the latest” date in § 2244(d)(1) tells a court how to choose from among the four dates specified in subsections (A) through (D) once those dates are identified. This language does not tell a court how to identify the date specified in subsection (D) in a case in which the application contains multiple claims. Accordingly, there is nothing in § 2244(d) that suggests that a court should follow the Walker interpretation and select the latest date on which the factual predicate of any claim presented in a multi-claim application could have reasonably been discovered. It would be just as consistent with the statutory language to pick the earliest date.
Id. at 118. Thus, the Walker interpretation failed on its own terms.
*1180 The court in Fielder went on to identify two reasons why that the statute of limitations in § 2244(d)(1) should be applied on a claim-by-claim basis. First, this approach is consistent with how statutes of limitations are generally applied, and Congress made no indication of departing from this approach in AEDPA. Id. at 118-19. Second, the claim-by-claim approach avoids the perverse result of “permitting a late-accruing federal habeas claim to open the door for the assertion of other claims that had become time-barred years earlier.” Id. at 120.[4]
We adopt the reasoning in Fielder and hold that § 2244(d)(1) requires consideration of the appropriate triggering date for each claim presented in the application. Accordingly, here § 2244(d)(1)(D) provides the triggering date for Souliotes’s substantive actual innocence claim, which is based on newly discovered evidence, but § 2244(d)(1)(A) cabins the limitations period as to Souliotes’s other habeas claims. As a result, those other claims are time-barred unless he can prevail on his equitable tolling or gateway claims.
II. Equitable Tolling
Souliotes seeks equitable tolling based on his counsel’s reliance on an ambiguous docket entry. Section 2244(d)(1)(A) instructs courts to calculate the date on which the petitioner’s judgment “became final by the conclusion of direct review.” The operative date for Souliotes is ninety days after the California Supreme Court’s denial of his petition for review on October 16, 2002. See Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir.1999). This date is correctly indicated in the on-line docket of the California Supreme Court. The on-line docket of the California Court of Appeal, however, contains an entry on October 22, 2002 that reads: “Petition for review denied in Supreme Court.” The “Notes” section of this October 22, 2002 entry in turn reads: “denied 10/16/02 ea member of ct notified by cc mail.” Based on this entry, Souliotes’s habeas counsel took October 22, 2002, rather than October 16, 2002, to be the triggering date for the one-year limitations period under § 2244(d)(1)(A). This mistake caused counsel to file Souliotes’s petition five days late.
In Holland v. Florida, the Supreme Court recently confirmed that the AEDPA limitations period is not jurisdictional and is subject to equitable tolling. 130 S.Ct. at 2560; see also Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 n. 2 (9th Cir.2009). A petitioner “is ‘entitled to equitable tolling’ only if he shows ‘(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way’ and prevented timely filing.” Holland, 130 S.Ct. at 2562 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005)). In Holland, the Court rejected the “extraordinary circumstance” standard applied by the Eleventh Circuit as “too rigid,” under which even “grossly negligent” attorney conduct would not warrant tolling absent a showing of “bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer’s part.” Id. at 2562-63 (internal quotation marks omitted). Rather, the tolling analysis is a flexible, equitable inquiry in which courts “exercise judgment in light of prior precedent, but with awareness of the fact that specific *1181 circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case.” Id. at 2563.
Under our precedent, Souliotes does not warrant a grant of equitable tolling. The clerical error that occurred here is hardly “extraordinary,” and it is reasonable to expect Souliotes’s counsel to have determined the correct date on which the state court judgment became final. We have repeatedly held that counsel’s negligent miscalculation of the limitations period does not entitle a petitioner to equitable relief. Miranda v. Castro, 292 F.3d 1063, 1066-68 & n. 4 (9th Cir.2002); Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir.2001); see also Holland, 130 S.Ct. at 2564 (noting that “a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling” (internal quotation marks and citations omitted)). Because Souliotes cannot show an “extraordinary circumstance” that prevented him from filing on time, his request for equitable tolling fails.
III. Innocence Gateway
Souliotes additionally argues that, despite his untimely filing, he may yet pursue his ineffective assistance, Vienna Convention, and juror misconduct claims under the actual innocence gateway established in Schlup v. Delo. Souliotes’s claim, however, is squarely foreclosed by our recent decision in Lee v. Lampert.
As we explained in Lee, Schlup created an actual innocence exception to the limitations on second or successive habeas petitions and to state procedural requirements. Lee, 610 F.3d at 1131. Under Schlup, a petitioner’s “otherwise-barred claims [may be] considered on the merits ... if his claim of actual innocence is sufficient to bring him within the ‘narrow class of cases ... implicating a fundamental miscarriage of justice.’ ” Carriger v. Stewart, 132 F.3d 463, 477 (9th Cir.1997) (en banc) (quoting Schlup, 513 U.S. at 315, 115 S.Ct. 851).
Although we previously declined to address whether the gateway applied to AEDPA’s statute of limitations for original petitions, see Majoy v. Roe, 296 F.3d 770, 777 (9th Cir.2002), our court in Lee joined the majority of our sister circuits to hold that no such exception exists under § 2244(d)(1). See Lee, 610 F.3d at 1128 (citing cases). As we explained at length:
The omission of “actual innocence” from the enumerated list of exceptions in the statutory text is significant.... Since section 2244(d) comprises six paragraphs defining its one-year limitations period in detail and adopting very specific exceptions ..., Congress likely did not conceive that the courts would add new exceptions and it is even more doubtful that it would have approved of such an effort. It is not our place to engraft an additional judge-made exception onto congressional language that is clear on its face.... That Congress created three exceptions to the general rule that the limitations period begins upon the conclusion of direct review indicates it did not intend other exceptions, and there is no evidence to the contrary.
Id. at 1129-30 (internal quotation marks and citations omitted). This plain reading was additionally “buttressed by the explicit enumeration of an actual innocence exception in ... section 2244(b)(2)(B), which governs the filing of second or successive habeas petitions.” Id. at 1130.
Lee precludes any argument that Souliotes has recourse to the innocence gateway. Consequently, we affirm the district court’s rejection of Souliotes’s gateway claim.
Conclusion
Because the district court applied an incorrect diligence standard under *1182 § 2244(d)(1)(D), we reverse the district court’s dismissal of Souliotes’s habeas petition and remand for an expedited evidentiary hearing to determine when an inmate in Souliotes’s position could have discovered the new MPD evidence with due diligence. If the district court concludes that Souliotes satisfies the diligence requirement of § 2244(d)(1)(D), the district court shall adjudicate the merits of Souliotes’s actual innocence claim on an expedited basis. We affirm the district court’s denial of equitable tolling based on counsel’s miscalculation of the limitations period at § 2244(d)(1)(A) as well as the rejection of Souliotes’s gateway claim. Thus, Souliotes’s remaining claims for relief are time-barred.
AFFIRMED IN PART, REVERSED IN PART, and REMANDED for proceedings consistent with this opinion. The parties shall bear their own costs on appeal.

. The same witness acknowledged on cross-examination that glues and adhesives used to manufacture shoes can lead to the presence of MPDs.

. Between 2000 and 2006, Souliotes exhausted his state remedies.

. We order an expedited hearing so that Souliotes, who is now almost seventy years old, and who has been incarcerated since 1997, may have an opportunity for meaningful review of his innocence claim.

. This approach is also consistent with Supreme Court dicta interpreting § 2244(d)(1)(D) to require claim-by-claim consideration. See Pace v. DiGuglielmo, 544 U.S. 408, 416 n. 6, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) (citing § 2244(d)(1)(D) in discussion of whether state post-conviction petition was "properly filed” under § 2244(d)(2)).