**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DESTINNI MARDESICH,
　　　　　*Petitioner-Appellant,*

　　　　　v.

MATTHEW CATE*, Secretary,
California Department of
Corrections and Rehabilitation;
SCOTT KERNAN*, Chief Deputy
Secretary for Adult Operations,
California Department of
Corrections and Rehabilitation;
TERRI MCDONALD*, Director of
Division of Adult Institutions,
California Department of
Corrections and Rehabilitation;
DEBORAH K. JOHNSON*, Warden,
Central California Women's
Facility; KAMALA HARRIS*,
Attorney General,
　　　　　*Respondents-Appellees.*

No. 08-55404

D.C. No.
8:06-cv-00009-
ODW-AGR

OPINION

---

　　*Matthew Cate is substituted for his predecessor, Roderick Q. Hickman, as Secretary for the California Department of Corrections and Rehabilitation; Scott Kernan is substituted for his predecessor, Joseph McGrath, as Chief Deputy Secretary for Adult Operations for the California Department of Corrections and Rehabilitation; Terri McDonald is substituted for her predecessor, John Dovey, as Director of Division of Adult Institutions for the California Department of Corrections and Rehabilitation; Deborah K. Johnson is substituted for her predecessor, Debra Jacquez, as Warden, Central California Women's Facility; Kamala Harris is substituted for her predecessor, Bill Lockyer, as Attorney General of California. *See* Fed. R. App. P. 43(c)(2).

Appeal from the United States District Court
for the Central District of California
Otis D. Wright, II, District Judge, Presiding

Argued and Submitted
December 5, 2011—Pasadena, California

Filed February 21, 2012

Before: Dorothy W. Nelson, Ronald M. Gould, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

## COUNSEL

Anand Krishnaswamy (argued), Michael J. Brennan, University of Southern California Post-Conviction Justice Project, Los Angeles, California, for petitioner-appellant Destinni Mardesich.

Anthony Da Silva, Deputy Attorney General, San Diego, California, for respondents-appellees Matthew Cate, Secretary, California Department of Corrections and Rehabilitation, et al.

## OPINION

IKUTA, Circuit Judge:

Destinni Mardesich appeals the district court's dismissal of three claims in her federal habeas petition as untimely under the one-year statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2244(d)(1). Because we apply the AEDPA statute of limitations on a claim-by-claim basis, and because Mardesich's three claims challenging a state administrative agency's order were filed nearly 18 months after the statute of limitations expired, we affirm the district court's dismissal.

I

A

When Destinni Mardesich was 16, she convinced two friends to help her kill Damian McKenna, her former boyfriend and father of her child, because she feared McKenna might try to obtain custody of their young son. Though the fatal shots were fired by Mardesich's friend, she was personally armed with a gun and was present during the murder. She

was tried as an adult in the Orange County Superior Court and convicted of first degree murder on December 15, 1992. The court sentenced her to 26 years to life, and committed her to the California Youth Authority, a state agency providing education and treatment to juvenile offenders.[1]

About three years later, the California Youthful Offender Parole Board (Board)[2] exercised its authority under section 1737.1 of the California Welfare and Institutions Code to reconsider Mardesich's commitment to the Youth Authority.[3] After conducting three hearings, the Board concluded that Mardesich was not amenable to treatment and was therefore an improper person to be retained by the Youth Authority. Following the last of these hearings on October 25, 1996, the

---

[1]The Youth Authority is now known as the "California Department of Corrections and Rehabilitation, Division of Juvenile Facilities." *See* Cal. Penal Code § 6001.

[2]In 2005, the Board was abolished and its parole decisionmaking authority was transferred to the Board of Parole Hearings. *See* Cal. Welf. & Inst. Code §§ 1716, 1725.

[3]Cal. Welf. & Inst. Code § 1737.1 (1996) provided, in pertinent part:

> Whenever any person who has been convicted of a public offense in adult court and committed to and accepted by the Youth Authority appears to the Youthful Offender Parole Board, either at the time of his or her first appearance before the board or thereafter, to be an improper person to be retained by the Youth Authority, or to be so incorrigible or so incapable of reformation under the discipline of the Youth Authority as to render his or her detention detrimental to the interests of the Youth Authority and the other persons committed thereto, the board may order the return of such a person to the committing court. The court may then commit the person to a state prison or sentence him or her to a county jail as provided by law for punishment of the offense of which he or she was convicted. The maximum term of imprisonment for a person committed to a state prison under this section shall be a period equal to the maximum term prescribed by law for the offense of which he or she was convicted less the period during which he or she was under the control of the Youth Authority. This section shall not apply to commitments from juvenile court.

Board issued an order returning Mardesich to the Orange County Superior Court for criminal resentencing pursuant to section 1737.1. The Board's decision became final when it denied Mardesich's administrative appeal of the return order on August 19, 1997. Following the Board's order, the Orange County Superior Court sentenced Mardesich to 26 years to life in state prison on July 31, 1998.

Mardesich challenged the Board's return order and the subsequent Orange County resentencing in two separate legal proceedings. First, on October 15, 1997, Mardesich appealed the Board's decision by filing a petition for administrative mandamus in Ventura County Superior Court. The superior court denied the petition and after a round of appeals, the Ventura County Court of Appeals ultimately affirmed the denial. The California Supreme Court denied review of the case and that decision became final on August 19, 2003 when the 90-day period for filing a petition for writ of certiorari to the United States Supreme Court expired. *See* Sup. Ct. R. 13.1; *People v. Quicke*, 455 P.2d 787, 790 (Cal. 1969). Second, Mardesich appealed the Orange County Superior Court's resentencing decision. This challenge was also unsuccessful. The Orange County Court of Appeals affirmed the sentence, and the California Supreme Court denied review of the case in a decision that became final 90 days later on December 14, 2004.

B

Mardesich petitioned for federal habeas relief under 28 U.S.C. § 2254. On December 13, 2005, the clerk's office of the district court for the Central District of California received Mardesich's habeas petition, which was then officially filed on January 3, 2006. Mardesich filed an amended petition on March 27, 2006. The petition raised four claims.

The first claim asserted that section 1737.1 violates Mardesich's federal and state constitutional due process rights

because it permits the Board to return a youth offender for criminal sentencing without giving that ward "constitutionally adequate notice or [an] opportunity to be heard." According to the petition, section 1737.1 allows the Board to return a ward after administrative proceedings where the ward has, among other things, no "adequate notice of charges; no right to counsel; . . . and no right to a meaningful hearing with fair opportunity for presentation of evidence, cross-examination, and a neutral adjudicator limited to considering only evidence presented in the hearing." In short, claim one alleged that section 1737.1 is unconstitutional because it essentially allows the Board to punish selected wards by "administrative fiat."

The second claim asserted that section 1737.1 is unconstitutionally vague because a "person reading th[e] statute cannot determine what specifically is—and is not—a 'violation' of Section 1737.1." Instead, "the statute leaves it up to the State (here, an administrative agency, the [Board]) to determine *ad hoc* what will and will not result in more criminal punishment, based on standardless discretion." Thus, claim two stated that the Board's "exercise[ of] its unbounded discretion to return [Mardesich] to Superior Court" was unconstitutional.

The third claim alleged that section 1737.1 is unconstitutionally overbroad because it permits the Board to return a ward for criminal resentencing "based upon protected First Amendment activities," such as peaceful speech and thought. For example, in Mardesich's case, the Board's decision was in part based upon a "setback in her psychotherapy" that suggested she was "not treatable." In short, claim three stated that section 1737.1 is unconstitutional because it allows the Board to exercise "unbounded discretion in punishing a person based in part on the content of his or her speech."

Finally, the fourth claim asserted that the 1998 Orange County resentencing violated the federal and California double jeopardy clauses because it was a "second sentence for the

same offense." According to claim 4, "[t]he second sentence is void" because "the [Orange County] Superior Court had no power" to impose it in the first place.

The magistrate judge recommended dismissing claims one through three of Mardesich's amended habeas petition as untimely under AEDPA's one-year statute of limitations. Though the magistrate found claim four to be timely, she recommended denying it as not contrary to, or an unreasonable application of, clearly established Supreme Court law. The district court adopted the magistrate's recommendations and denied Mardesich's habeas petition. The district court denied her request for a Certificate of Appealability (COA). Mardesich timely appealed and a motions panel of this court granted a COA with respect to one issue: "whether the district court properly dismissed claims one, two, and three as time-barred."

On appeal, Mardesich asserts that claims one through three of her December 13, 2005 habeas petition are timely because the statute of limitations for these claims did not start running until her appeal of the Orange County resentencing became final on December 14, 2004. Mardesich argues that claims in a habeas petition are necessarily challenges to the proceeding that resulted in the petitioner's incarceration, and therefore a court must construe her three claims as challenges to the Orange County Superior Court's resentencing that resulted in her incarceration. California, by contrast, argues that these three claims challenge the Board's order returning Mardesich to superior court for resentencing pursuant to section 1737.1, which became final at the conclusion of Mardesich's mandamus proceedings on August 19, 2003.

II

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo a district court's dismissal of a habeas petition

on timeliness grounds. *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010).

**[1]** A "person in custody pursuant to the judgment of a State court" can file a habeas petition alleging that the petitioner "is in custody in violation of the Constitution . . . of the United States." 28 U.S.C. § 2254(a). AEDPA contains a one-year statute of limitations for bringing such petitions, which provides in relevant part:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > . . . or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1). This one-year limitations period is tolled during the pendency of a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim . . . ." § 2244(d)(2).

In order to address the timeliness of Mardesich's claims on appeal, we must consider two threshold issues: (1) whether we apply the one-year statute of limitations to the entire habeas petition, or to individual claims within the petition, and (2) whether the claims at issue here are challenges to the

Board's return order or to the superior court's subsequent resentencing.

**[2]** We first turn to the question whether we apply the one-year statute of limitations on a claim-by-claim basis, so that each claim must survive the time bar, or whether we consider the habeas petition as a whole, such that all claims in a petition may proceed so long as at least one of them is timely. As noted above, the district court applied the claim-by-claim approach when it dismissed claims one through three of Mardesich's habeas petition, but accepted her fourth claim as timely. Under the second approach, Mardesich's petition (and all its claims) would not be time-barred so long as the fourth claim is timely. We asked for supplemental briefing on this issue over which our sister circuits have split.[4]

**[3]** The AEDPA statute of limitations provides that "[a] 1 year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court," and states that "the limitation period shall run from the latest of" a number of triggering dates. § 2244(d)(1). Interpreting this language, the Eleventh Circuit held that because § 2244(d)(1) declares the limitations period "shall apply to an *application* for a writ of habeas corpus," a court must "look at whether the 'application' is timely, not whether the individual 'claims' within the application are timely." *Walker v. Crosby*, 341 F.3d 1240, 1243 (11th Cir. 2003) (emphasis in original). Under this interpretation, anapplication is timely so long as one claim within the application

---

[4]This issue was not certified on appeal. "Under Ninth Circuit Rule 22-1(e), uncertified issues raised on appeal 'will be construed as a motion to expand the COA and will be addressed by the merits panel to such extent as it deems appropriate.' " *Towery v. Schriro*, 641 F.3d 300, 311 (9th Cir. 2010) (quoting Ninth Cir. R. 22-1(e)). We grant this motion to expand the COA because, given the split in authority, we hold that "reasonable jurists could debate" whether the existence of one timely claim in Mardesich's petition renders her entire petition timely. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

is timely. Applying this rule, *Walker* held that a habeas petition with four untimely claims and one timely claim was a "timely" petition under AEDPA. *Id.* at 1242, 1245-46.

**[4]** In *Fielder v. Varner*, the Third Circuit rejected this analysis. 379 F.3d 113, 117-18 (3d Cir. 2004) (Alito, J.). Instead, it held that AEDPA's statute of limitations should be applied to each individual claim in a habeas petition. *Id.* According to *Fielder*, the *Walker* court's reliance on the term "application" in § 2244(d)(1) was misguided because it conflicted with the language in § 2244(d)(1)(D), which provides that the one-year statute of limitations runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *Id.* In *Fielder*, the petitioner's application presented two claims, one involving prosecutorial misconduct at trial (which was known to the petitioner at the time of trial) and one involving newly discovered evidence, which was not known to petitioner until years later. *Id.* at 118. In this situation, the *Walker* interpretation could not provide guidance for selecting which triggering date starts the one-year statute of limitations for the entire application because "there is nothing in § 2244(d)(1) that provides a ground for picking one date over the other." *Id.* The *Fielder* court reasoned that this ambiguity was not resolved by § 2244(d)(1)'s instruction that "[t]he limitation period shall run from the latest of" one of the four triggering dates in § 2244(d)(1)(A)-(D), because that reference only "tells a court how to choose from among the four dates specified in subsections (A) through (D) *once those dates are identified.*" *Id.* (emphasis in original). It "does not tell a court how to identify the date specified in subsection (D) in a case in which the application contains multiple claims." *Id.* As a result, *Walker*'s application-based interpretation "fail[ed] on its own terms." *Id.*

Because the ambiguous language in § 2244(d)(1) did not provide sufficient guidance, *Fielder* considered the statute as a whole, and saw "two strong reasons for concluding that the

statute of limitations set out in § 2244(d)(1) should be applied on a claim-by-claim basis." *Id.* First, a claim-by-claim approach was consistent with how statutes of limitations are generally applied in civil and criminal cases, and there was no indication that Congress intended to depart from this norm in AEDPA. *Id.* at 118-19. Second, such an approach avoided the strange situation in *Walker* whereby a "late-accruing federal habeas claim . . . open[s] the door for the assertion of other claims that had become time-barred years earlier." *Id.* at 120.

**[5]** The *Fielder* interpretation was subsequently adopted by the Sixth Circuit. *See Bachman v. Bagley*, 487 F.3d 979, 984 (6th Cir. 2007). And we likewise adopted *Fielder*'s approach in a case that was later vacated on other grounds. *See Souliotes v. Evans*, 622 F.3d 1173, 1179-80 (9th Cir. 2010), *vacated by Souliotes v. Evans*, 654 F.3d 902 (9th Cir. 2011). *Souliotes* evaluated a habeas petition that included one claim that the petitioner was actually innocent, based on evidence discovered some eight months before the petition was filed, and three claims challenging the underlying conviction that had become final over a year before the petition was filed. 622 F.3d at 1176, 1179. The district court dismissed the entire petition as time-barred. *Id.* at 1177. On appeal, we endorsed the reasoning in *Fielder*. *Id.* at 1180.[5] Further, we noted that a claim-by-claim approach was consistent with Supreme Court dicta in *Pace v. DiGuglielmo*, 544 U.S. 408, 416 n.6 (2005), which suggested that § 2244(d)(1)(B)-(D) "require[d] claim-by-claim consideration." *Souliotes*, 622 F.3d at 1180 n.4. Applying this approach, we reversed the dismissal of Souliotes's claim based on newly discovered evidence, but

---

[5]*Souliotes* was not vacated because of any controversy regarding this holding, but because it relied on another Ninth Circuit case (that was later reversed en banc) to hold that there was no "actual innocence" exception to AEPDA's statute of limitations for original petitions under § 2244(d)(1). *Id.* at 1181 (citing *Lee v. Lampert*, 610 F.3d 1125 (9th Cir. 2010), *vacated and reversed en banc by Lee v. Lampert*, 653 F.3d 929 (9th Cir. 2011) (en banc)).

affirmed the holding that his other three claims were untimely. *Id.* at 1180-82.

**[6]** We are persuaded by the reasoning in *Fielder*, just as we were in *Souliotes*. Stretched to its logical extreme, *Walker*'s application-based approach would hold that AEDPA's statute of limitations never completely runs on *any* claim so long as there is a possibility of a timely challenge for *one* claim. There is no evidence that Congress intended such a result when it placed a time bar on habeas petitions by enacting a one-year statute of limitations. *See Duncan v. Walker*, 533 U.S. 167, 179 (2001) ("The 1-year limitation period of § 2244(d)(1) quite plainly serves the well-recognized interest in the finality of state court judgments.").

**[7]** In her supplemental briefing, Mardesich echoes the arguments made in *Walker*. According to Mardesich, the plain text of § 2244(d)(1) unambiguously states that the limitations period shall be applied to "applications" and if Congress had intended for the limitations to be applied to claims, it would have said so. We reject this argument because, as shown above, it cannot properly resolve the ambiguity in § 2244(d)(1)(D). Therefore, we hold that AEDPA's one-year statute of limitations in § 2244(d)(1) applies to each claim in a habeas application on an individual basis.

## III

**[8]** We now turn to our second threshold issue: whether Mardesich's three claims on appeal are challenging the Board's order under section 1737.1 returning her to the superior court for resentencing or the subsequent state court resentencing judgment.

## A

We begin by briefly outlining the background legal principles. Although petitioners must be in "custody pursuant to a

state court judgment" in order to bring a habeas petition under § 2254, they are not limited to challenging the specific judgment of conviction and sentence that resulted in their state custody. *See Shelby v. Bartlett*, 391 F.3d 1061, 1063 (9th Cir. 2004). Rather, petitioners can also challenge "the fact or duration of [their] confinement" based "upon the alleged unconstitutionality of state administrative action." *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973). The Supreme Court has indicated that such challenges to administrative actions are cognizable in habeas if their success "would necessarily demonstrate the invalidity of confinement or its duration," such as through obtaining an "injunction compelling speedier release or . . . through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Wilkinson v. Dotson*, 544 U.S. 74, 81, 82 (2005).

We have held that the one-year limitations period applies to "all applications for writ of habeas corpus" under § 2254, including those challenging state administrative actions. *Shelby*, 391 F.3d at 1064; *Redd v. McGrath*, 343 F.3d 1077, 1084 (9th Cir. 2003). In *Redd*, we established the mechanics for courts applying the limitations period to such petitions. *Redd*, 343 F.3d at 1081-85. *Redd* involved a habeas petition challenging a denial of parole. *Id.* at 1079. In determining whether the statute of limitations barred Redd's claims, we considered whether the applicable triggering date under § 2244(d)(1) was (1) § 2241(d)(1)(A), which provides that the statute of limitations begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," or (2) § 2241(d)(1)(D), which provides that the statute of limitations begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *Id.* at 1081-82. We concluded that subparagraph (D), rather than (A), was applicable because an administrative decision, such as the denial of parole in *Redd*, is not a "judgment" as defined in subparagraph (A). *Id.* Therefore, by its plain language, subparagraph

(A) is not applicable to petitions challenging an administrative decision. Applying subparagraph (D), we held that the factual predicate for Redd's claim was the parole board's denial of his administrative appeal and that the statute of limitations began running the next day. *Id.* at 1082-84; *see also Shelby*, 391 F.3d at 1062, 1066.

**[9]** Therefore, under *Redd* and *Shelby*, when a habeas petitioner challenges an administrative decision affecting the "fact or duration of his confinement," AEDPA's one-year statute of limitations runs from when the "factual predicate" of the habeas claims "could have been discovered through the exercise of due diligence." § 2244(d)(1)(D); *see Shelby*, 391 F.3d at 1066.[6] As a general rule, the state agency's denial of an administrative appeal is the "factual predicate" for such habeas claims. *See Shelby*, 391 F.3d at 1066; *Redd*, 343 F.3d at 1085.

B

We now review Mardesich's three claims on appeal. As previously noted, *see supra* at 1935-36, the first three claims in Mardesich's habeas petition challenge the constitutionality of section 1737.1, the statute authorizing the Board to order her return to superior court for resentencing, as well as the Board's exercise of its power under that provision.[7] Claim one

---

[6]Several of our sister circuits have reached similar conclusions on this issue. *See Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008); *Dulworth v. Evans*, 442 F.3d 1265, 1268 (10th Cir. 2006); *Cook v. N.Y. State Division of Parole*, 321 F.3d 274, 280-81 (2d Cir. 2003); *Kimbrell v. Cockrell*, 311 F.3d 361, 363-64 (5th Cir. 2002) (using administrative decision itself as the factual predicate, but noting that a properly filed administrative appeal would toll the statute of limitations); *but see Cox v. McBride*, 279 F.3d 492, 493 (7th Cir. 2002) (holding that AEDPA's statute of limitations does not apply to petitions challenging administrative decisions).

[7]As noted above, the pertinent language in section 1737.1 provides that whenever a ward "appears to the [Board] . . . to be an improper person to

asserts that section 1737.1 deprived Mardesich of due process because it allowed the Board to order her return without giving her procedural safeguards such as notice of charges or the right to counsel. Claims two and three allege that section 1737.1 is void for vagueness and unconstitutionally overbroad, respectively, because it gave the Board unbounded discretion in making its decision to order her return. By contrast, the fourth claim contends that the superior court's resentencing procedure was unconstitutional because it violated double jeopardy.

**[10]** We conclude that the first three claims in Mardesich's federal habeas petition asserted constitutional infirmities in the Board's decision, not the state superior court's. As we have recognized, the issuance of the return order is entirely "in the discretion of the [Board], whose authority is 'separate and distinct from that of the sentencing judge.' " *Torrey v. Estelle*, 842 F.2d 234, 236 (9th Cir. 1988) (quoting *Sanchez v. United States*, 572 F.2d 210, 211 (9th Cir. 1977)). Thus, while the Board's return order under section 1737.1 may be a precursor to the subsequent state court resentencing, it is an administrative decision "in which the sentencing court does not participate." *Id.* at 236 n.2. California courts have similarly recognized that section 1737.1 gives the Board exclusive authority to determine whether or not to retain a ward committed to its authority. *See People v. Lo*, 49 Cal. Rptr. 2d 594, 600-01 (Cal. Ct. App. 1996); *cf. Owen E. v. West (In re Owen E.)*, 592 P.2d 720, 723 (Cal. 1979) (analogizing the Board's role to that of a parole board for youth wards). As such, the Board's order returning Mardesich to superior court because she was not amenable to treatment and the superior court's

be retained by the Youth Authority, or to be so incorrigible or so incapable of reformation under the discipline of the Youth Authority as to render his or her detention detrimental to the interests of the Youth Authority and the other persons committed thereto, the [B]oard may order the return of such a person to the committing court."

subsequent resentencing proceeding are two independent state actions that are separately challengeable via federal habeas petitions. Given this distinct allocation of authority, Mardesich's three claims challenging the scheme in section 1737.1 are allegations that the Board, not the resentencing court, violated her constitutional rights.

[11] Mardesich's constitutional challenges to the Board's decision are cognizable in habeas. Each of the three claims challenges the "fact or duration" of her incarceration based "upon the alleged unconstitutionality" of the Board's action. *Preiser*, 411 U.S. at 489. Here, as in *Shelby* and *Redd*, success on these claims "would necessarily demonstrate the invalidity of confinement or its duration" because the Board's return order led directly to Mardesich's subsequent criminal resentencing and incarceration. *Wilkinson*, 544 U.S. at 82. Therefore, the one-year limitations period for challenging this administrative action is governed by § 2244(d)(1)(D), and is triggered by the "date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

[12] Given this conclusion, and mindful that we apply the AEDPA statute of limitations on a claim-by-claim basis, *see supra* at Part II, we hold that Mardesich's claims that challenge the Board's order returning her to superior court for resentencing are not timely. As previously explained, the "factual predicate" for these claims is the state agency's denial of the petitioner's administrative appeal. *See Shelby*, 391 F.3d at 1066; *Redd*, 343 F.3d at 1082. Here, the Board denied Mardesich's administrative appeal on August 19, 1997. The limitations period began running on the next day, *see Redd*, 343 F.3d at 1082, and a total of 56 days then passed before Mardesich collaterally challenged the decision by filing for administrative mandamus, *see id.* at 1082-85 (running the limitations period during this time before petitioner sought state review of the administrative order). The limitations period was then tolled between October 15, 1997 and August

19, 2003, during the pendency of Mardesich's petition for administrative mandamus. *See* § 2244(d)(2). The limitations period resumed on August 20, 2003, and expired 309 days later, on June 24, 2004.[8] Accordingly, the claims challenging the Board's return order in Mardesich's December 13, 2005 habeas petition were untimely by nearly 18 months.[9]

Mardesich argues that claims one through three of her habeas petition necessarily challenge her 1998 Orange County resentencing because she is in custody pursuant to that state court judgment. We reject this argument. As *Shelby* made clear, "we ask whether the petitioner is in custody pursuant to a state court judgment" because such custody is a prerequisite to the filing of a habeas petition under § 2254. *Shelby*, 391 F.3d at 1063 (internal quotation marks and citation omitted); *see also White v. Lambert*, 370 F.3d 1002, 1007 (9th Cir. 2004) (holding that "§ 2254 is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction"), *overruled on other grounds by Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010). But once a petitioner has made this threshold showing of custody pursuant to a state court judgment, the petitioner is not limited to challenging that state court judgment. In fact, the very nature of habeas petitions challenging administrative decisions is such that a prisoner is in custody pursuant to a state court conviction and sentence, but alleges that an entirely different state administrative action violated his constitutional rights. *See, e.g., Shelby*, 391 F.3d at 1062-64; *Redd*, 343 F.3d at 1079.

---

[8]This date is 56 days earlier than the date arrived at by the district court, August 19, 2004, because the district court did not count the 56 days between the denial of administrative appeal and Mardesich's mandamus filing. Under *Redd*, a court must count these days. 343 F.3d at 1082-85.

[9]Because we hold that Mardesich's claims on appeal are untimely on this basis, we need not address her argument that claims challenging the Orange County Superior Court's resentencing judgment would have been timely.

**[13]** Such is the case here. Mardesich properly filed her habeas petition under § 2254 because she is in custody pursuant to the Orange County Superior Court's resentencing judgment. *See Burton v. Stewart*, 549 U.S. 147, 156-57 (2007) (holding that a sentencing qualifies as a state court "judgment"). But instead of challenging that judgment, her claims on appeal alleged that the Board violated her constitutional rights when it returned her to superior court for sentencing. As shown above, those claims are stale and must be dismissed.

IV

Because the limitations period for the administrative action Mardesich challenges in claims one through three of her habeas petition expired nearly 18 months before the petition was filed, the district court's dismissal of those claims as untimely is **AFFIRMED**.