**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| SODA MOUNTAIN WILDERNESS COUNCIL; et al., | No. 13-35438 |
| Plaintiffs - Appellants, | D.C. No. 1:12-cv-00434-CL |
| v. | MEMORANDUM* |
| UNITED STATES BUREAU OF LAND MANAGEMENT, | |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the District of Oregon
Owen M. Panner, Senior District Judge, Presiding

Argued and Submitted March 2, 2015
Portland Oregon

Before: PAEZ and IKUTA, Circuit Judges and TIGAR,** District Judge.

Soda Mountain Wilderness Council and several other environmental

organizations (collectively "Soda Mountain") appeal the district court's grant of

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

\*\* The Honorable Jon S. Tigar, District Judge for the U.S. District Court for the Northern District of California, sitting by designation.

summary judgment in favor of the Bureau of Land Management ("BLM"). Soda Mountain challenges the validity of the BLM's Environmental Assessment ("EA"), and Finding of No Significant Impact ("FONSI"), for the proposed Sampson Cove Forest Management Project (the "Project"). Soda Mountain alleges that the BLM committed several violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370(d), and the Federal Land Policy Management Act ("FLPMA"), 43 U.S.C. § 1701 *et seq.* We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part and reverse in part.

**1.** We review de novo a district court's ruling on cross motions for summary judgment. *Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957, 970 (9th Cir. 2011). Judicial review of an agency's compliance with NEPA and FLPMA is governed by the Administrative Procedures Act, 5 U.S.C. §§ 701-06; *Klamath Siskiyou Wildlands Ctr. v. Boody*, 468 F.3d 549, 554 (9th Cir. 2006). Agency decisions may be set aside only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* (quoting 5 U.S.C. § 706(2)(A)). "Agency action is valid if the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made." *Lands Council v. McNair*, 629 F.3d 1070, 1074 (9th Cir. 2010) (internal quotation marks omitted).

**2.**     We agree with the district court that the BLM adequately assessed the Project area's wilderness characteristics.  The EA relies on a 2006 wilderness survey prepared by the BLM, which addressed the definitional elements of wilderness in the Wilderness Act, 16 U.S.C. § 1131(c).  The BLM's decision to rely on a report that was four years old when it issued the EA was reasonable.  Moreover, the BLM's assessment of wilderness characteristics as described in the 2006 survey warrants our deference.  *See Native Ecosystems Council v. Weldon*, 697 F.3d 1043, 1053 (9th Cir. 2012).  In determining that the Project would not impact the area's wilderness characteristics, the BLM's decision was neither arbitrary nor capricious.

**3.**     The BLM's decision not to analyze the effects of the Project on the potential expansion of the Cascade Siskiyou National Monument did not violate NEPA.  An EA is required to consider the "direct, indirect, and cumulative impacts" of an action on the environment.  *Ctr. for Envtl. Law & Policy v. U.S. Bureau of Reclamation ("Envtl. Law")*, 655 F.3d 1000, 1006 (9th Cir. 2011).  Here, monument expansion was a "remote and highly speculative consequence[]" that did not warrant analysis in the EA.  *See Ground Zero Ctr. for Non-Violent Action v. U.S. Dep't of the Navy*, 383 F.3d 1082, 1090 (9th Cir. 2004).  The district court properly granted summary judgment on this issue.

3

**4.** When determining whether an action requires an Environmental Impact Statement ("EIS"), an agency must consider "[w]hether the action is related to other actions with individually insignificant but cumulatively significant impacts." *Envtl. Protection Info. Ctr. v. U.S. Forest Serv. ("EPIC")*, 451 F.3d 1105, 1014 (9th Cir. 2006) (quoting 40 C.F.R. § 1508.27(b)(7)). "Projects that are 'reasonably foreseeable' should be included in the cumulative effects analysis." *Id.* (quoting 40 C.F.R. § 1508.7). However, "projects need not be finalized before they are reasonably foreseeable." *N. Plains Res. Council, Inc. v. Surface Transp. Bd.*, 668 F.3d 1167, 1178 (9th Cir. 2011).

**5.** Soda Mountain argues that the BLM violated NEPA because the EA's cumulative impact analysis did not include any discussion of the Cottonwood Forest Management project. As the record reflects, this project was reasonably foreseeable at the time the BLM issued the EA for the Project. *See id.* Six months before the BLM issued the Project's EA, an interdisciplinary team ("IDT") decided to "spread the due dates out more for the 2011 timber sales," including changing a "specialist due date" for the Cottonwood EA. This note indicates that the Cottonwood project was certain to occur. Moreover, less than one month before the BLM issued the Project's EA, many elements of the Cottonwood project were already firmly established. For example, a team meeting document includes the

4

note that "[s]ilviculture prescriptions will be similar to" another project's "with a disease management component." The document also states that determinations regarding Northern Spotted Owl habitats would be complete within the next month. Given the focus on details, implementation of the Cottonwood project was not in question. Indeed, just two months after the BLM issued the Project's EA, it notified the public of the Cottonwood project. This timing is consistent with the January and June 2010 IDT notes, and leaves little doubt that the Cottonwood project was reasonably foreseeable in July 2010. Thus, we conclude that the record demonstrates that the Cottonwood project was reasonably foreseeable. Accordingly, we vacate the district court's ruling on this issue and direct the court to remand to the BLM for further consideration of its cumulative impact analysis regarding the Cottonwood project, and whether that analysis affects its decision not to issue an EIS.

6.     Soda Mountain also argues that the EA's cumulative impact analysis of the Shale City project was inadequate. We disagree. The cumulative impact analysis of the Shale City project was sufficient under NEPA because the EA contained "some quantified or detailed information." *Kern v. U.S. Bureau of Land Mgmt.*, 284 F.3d 1062, 1075 (9th Cir. 2002). In particular, the EA noted that the Shale City project was of limited size, no new roads would be built in the project area,

5

the project was not expected to affect special status wildlife species, and no direct or indirect effects to aquatic habitat were anticipated as a result of the project.

**7.** The BLM did not violate NEPA by failing to include in the EA a cumulative impact analysis of the Swinning Project (formerly known as Plateau Thin). As the government argues, the record reflects that this project falls outside the Project's cumulative impacts analysis area. Because Soda Mountain does not argue that the BLM's determination of this area was arbitrary, the BLM was under no obligation to address the cumulative impacts of the Shale City project. *See Kleppe v. Sierra Club*, 427 U.S. 390, 412 (1976).

**8.** In the district court, Soda Mountain also argued that the EA's cumulative impact analysis was insufficient because it did not address the impact of grazing allotment renewals in the Project area. The court, however, did not address the issue. We therefore decline to address it. Instead, on remand, the district court should address the issue in the first instance.

**9.** Soda Mountain also argues that the Project's requirements for green tree retention violate FLPMA because they are inconsistent with the governing RMP and the Northwest Forest Plan ("NWFP"). *See* 43 C.F.R. § 1610.5-3; *Or. Natural Res. Council Fund v. Brong*, 492 F.3d 1120, 1125 (9th Cir. 2007). We disagree. As the government argues, the RMP provides an exception to the minimum

6

requirement of sixteen green trees per acre on matrix lands for units where disease is a problem. The Project incorporates that exception in providing for six to eight green trees in diseased units. The Project's regeneration harvest units also comply with the green tree retention requirements in the NWFP. Finally, even if there were a potential FLPMA violation, that circumstance would not have resulted in a NEPA violation because whether a proposed action threatens a violation of another law is relevant to deciding whether to prepare an EIS, *EPIC*, 451 F.3d at 1014, not whether an EA is sufficient.

10.     The BLM sufficiently analyzed the Project's potential impact on bat habitats. Under NEPA, the EA was required to "briefly provide[] evidence and analysis for an agency's finding regarding an environmental impact," not "compile an exhaustive examination of each and every tangential event that potentially could impact the local environment." *Tri-Valley CARES v. U.S. Dep't of Energy*, 671 F.3d 1113, 1129 (9th Cir. 2012) (emphasis omitted). The EA meets that standard in assessing the Project's potential impact on bat habitats.

11.     Finally, Soda Mountain argues that the BLM should have prepared an EIS. Under NEPA, a federal agency must prepare an EIS for any proposal for any major federal action "significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C); *Klamath-Siskiyou Wildlands Ctr. v. Bureau of Land Mgmt.*, 387

7

F.3d 989, 993 (9th Cir. 2004). If the agency concludes there is no significant effect after preparing an EA, it may issue a FONSI. *Envtl. Law*, 655 F.3d at 1005. That finding obviates the need for an EIS. *Id.* In reviewing the decision not to prepare an EIS under the arbitrary and capricious standard, we must ensure that the agency has taken a "hard look" at the consequences of its proposed action. *See Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 623 F.3d 633, 636 (9th Cir. 2010). Contrary to Soda Mountain's arguments, the BLM did not fail to take a hard look at the Sampson Cove project area's "unique characteristics" or "highly controversial" effects. 40 C.F.R. § 1508.27(b)(3)-(4).

**12.** The injunction previously issued by this court shall remain in effect pending issuance of the mandate. On remand, Soda Mountain may apply to the district court for further injunctive relief. The district court shall remand the record to the BLM for further consideration of the cumulative impacts of the Cottonwood project.

**AFFIRMED in part; REVERSED in part; REMANDED.**

The parties shall bear their own costs on appeal.

*Soda Mountain Wilderness Council, et al. v. U.S. Bureau of Land Mgmt.*, No. 13-35438

IKUTA, Circuit Judge, concurring in part, dissenting in part:

Because the Cottonwood project was not a "reasonably foreseeable" future action at the time the Bureau of Land Management (BLM) prepared the Sampson Cove Project environmental analysis (EA), *see* 40 C.F.R. § 1508.7, I dissent from the majority's ruling on that issue.

We do not "require the government to do the impractical." *Envtl. Protection Info. Ctr. (EPIC) v. U.S. Forest Serv.*, 451 F.3d 1005, 1014 (9th Cir. 2006) (internal quotation marks omitted). If an agency lacks enough information about the parameters of a possible future project to "permit meaningful consideration," it need not address the project in the EA. *Id.*

Here, the majority's claim that the BLM had enough information about the Cottonwood project rests on two slim reeds that do not bear the weight placed on them. The majority says "an interdisciplinary team" made a decision about the Cottonwood project "[s]ix months before the BLM issued the Project's EA." Maj. at 4. But the record shows only an internal agenda entitled "Ashland RA ID Team Meeting" dated January 27, 2010, which contains one cryptic sentence: "In order to spread the due dates out more for the 2011 timber sales, we changed the specialist due dates for Cottonwood EA to November 2, 2010; to February 15, 2011 for Rio

Climax, and to June 1, 2011 for Sweeper." That's it. Nothing in this sentence indicates the nature of the "specialist due date" for the Cottonwood EA, or what the nature or parameters of the project might be.[1]

The majority's only other support is an internal agenda for a "Cottonwood IDT Meeting" dated June 30, 2010, with more shorthand entries that include no information about the location or scope of the project. Based on this document, the majority claims that "less than one month before the BLM issued the Project's EA, many elements of the Cottonwood project were already firmly established." Maj. at 4. But only a mind reader could figure that out. The majority points to an entry stating, in full, "Silviculture prescriptions will be similar to Plateau Thin's with a disease management component." But the next entry shows that even the silviculture prescriptions had not been finalized: "Nate will need to do stand exams to confirm and fine tune prescriptions and marking guidelines." And the next states: "Nate still needs to do field verification and stand exams field work this summer in Cottonwood." Further entries suggest that key issues were still under "preliminary discussion." For instance, with respect to recreation, the agenda

---

[1] The majority states that this note indicates that the Cottonwood project was "certain to occur." Maj. at 4. The question, however, is not whether a project is "certain to occur," but rather whether there is enough information available about the project to permit meaningful consideration of its cumulative impacts. *See EPIC*, 451 F.3d at 1014.

states:  "[w]inter rec trails - no winter hauling," "PCT - no cut 100' buffer," and "[r]oad construction?"  With respect to botany, the agenda states, "few issues, south part may be FRGE habitat."

To the extent we can read anything into the agenda, it establishes that the Cottonwood project was too preliminary to be "reasonably foreseeable."  *See* 40 C.F.R. § 1508.7.  Indeed, nothing in either agenda refutes the BLM's assertion that, at the time the Project EA was issued, the BLM had not yet determined where the Cottonwood Project would be located in a 45,370 acre area.  The agendas are so lacking in specific information that had the BLM titled the agenda notes "Project Periwinkle IDT Meeting," there would have been nary a hint that these preliminary discussions would eventually become the Cottonwood project.  And other than this agenda for an internal team meeting, there's not a single piece of information about the Cottonwood project in the record—not a single clue as to its location or scope.

We have held that a future project was "reasonably foreseeable" when the project has been formally proposed, *see Ctr. for Envtl. Law & Policy v. U.S. Bureau of Reclamation*, 655 F.3d 1000, 1010 (9th Cir. 2011) ("We have define[d] . . . reasonably foreseeable action[s], for which cumulative impacts must be analyzed, to include proposed actions." (alterations in original) (internal quotation marks omitted)), or when the agency issues "a press release and Notice of Intent,"

3

*N. Alaska Envtl. Ctr v. Kempthorne*, 457 F.3d 969, 980 (9th Cir. 2006); *see also*

*Ctr. for Envtl. Law & Policy*, 655 F.3d at 1010 ("[W]e have previously held that an

action is not too speculative to qualify as a proposed action when the agency issues

a notice of intent to prepare an EIS." (internal quotation marks omitted)). But we

have never held that a possible future project, documented only in notes from an

internal meeting listing action items related to future development of the project,

was "reasonably foreseeable" and "not too speculative." *See Jones v. Nat'l Marine

Fisheries Serv.*, 741 F.3d 989, 1000 (9th Cir. 2013) ("For any project that is not yet

proposed, and is more remote in time, by contrast, a cumulative effects analysis

would be both speculative and premature." (internal quotation marks omitted)).

Here, the BLM did not issue a notice of intent to prepare an EIS, and the agenda

notes that do exist "are speculative and have not been reduced to specific

proposals." *See id.*; *see also EPIC*, 451 F.3d at 1014–15 (concluding that the

Forest Service properly excluded a future project from its cumulative impacts

analysis because the project was "in the initial planning stage" and the parameters

of the project, including "specifics of the units (size and treatment prescription),"

had not been identified at the time of the EA). Indeed, the BLM did not begin the

scoping process, *see* 40 C.F.R. § 1501.7 (explaining that "scoping" is the process

"for determining the scope of issues to be addressed and for identifying the

4

significant issues related to a proposed action"), for the Cottonwood project until more than two months after the Sampson Cove EA was issued.

The plaintiffs have the burden of proving that the BLM acted arbitrarily in failing to include the Cottonwood project in its cumulative impact analysis, and absent a showing of arbitrary action, we must assume that the BLM has exercised its discretion appropriately. *See* 5 U.S.C. § 706(2)(A); *Kleppe v. Sierra Club*, 427 U.S. 390, 412 (1976). Here, the two agendas at issue—the only evidence adduced by the plaintiffs—fail to show that any of the significant parameters of the Cottonwood project were known at the time of the Project EA. We should therefore defer to the BLM's assertion that at the time it prepared the Sampson Cove EA, the Cottonwood project was not far enough along for it to be reasonably foreseeable. *See Kleppe*, 427 U.S. at 412. We have no authority to fault an agency for failing to consider the cumulative impacts of contemplated future projects before there is an "actual plan or proposal that was sufficiently well-defined to permit meaningful consideration" of the cumulative impact of the project. *See Jones*, 741 F.3d at 1001 (internal quotation marks omitted).

Because the BLM appropriately excluded the Cottonwood project from its cumulative impact analysis, I would affirm the district court.