[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-12717

_____

D.C. Docket No. 05-00369-CV-RH

FILED
U.S. COURT OF
APPEALS
ELEVENTH CIRCUIT
JANUARY 9, 2013
JOHN LEY
CLERK

MICHAEL DUANE ZACK, III,

Petitioner-Appellant,

versus

KENNETH S. TUCKER,
PAM BONDI,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(January 9, 2013)

Before: DUBINA, Chief Judge, TJOFLAT, CARNES, BARKETT, HULL, MARCUS, WILSON, PRYOR, MARTIN and JORDAN, Circuit Judges.

DUBINA, Chief Judge:

Petitioner Michael Duane Zack's appeal from the district court's order denying him federal habeas relief pursuant to 28 U.S.C. § 2254 presents this court with the opportunity to revisit our precedent in *Walker v. Crosby*, 341 F.3d 1240 (11th Cir. 2003), and the rule it established with regard to the limitations period set forth in 28 U.S.C. § 2244(d)(1). We now overrule *Walker* to the extent it holds that § 2244(d)(1) provides a single statute of limitations that applies to the habeas corpus application as a whole and that individual claims within an application cannot be reviewed separately for timeliness. We conclude, based on the text and structure of the statute, Supreme Court precedent, decisions of our sister circuits, and Congressional intent, that the federal statute of limitations requires a claim-by-claim approach to determine timeliness. Accordingly, we affirm the district court's order denying Zack federal habeas relief.

## I. BACKGROUND

A Florida jury convicted Zack of first-degree murder, sexual battery, and robbery. After the sentencing phase, the jury recommended a sentence of death, and the trial court imposed a death sentence. The Florida Supreme Court affirmed Zack's conviction and death sentence on direct review. *Zack v. State*, 753 So. 2d 9 (Fla. 2000). On October 2, 2000, Zack's convictions and sentence became final when the United States Supreme Court denied his petition for a writ of certiorari.

2

*Zack v. Florida*, 531 U.S. 858, 121 S. Ct. 143 (2000). More than one year passed before Zack filed post-conviction motions in state court. On December 26, 2001, Zack filed his first state collateral motion, asking for an extension of time for filing a motion for collateral review under Florida Rule of Criminal Procedure 3.850. The trial court granted the motion and extended the deadline to May 2002, when Zack filed a Rule 3.850 motion raising numerous issues.

While Zack's collateral motion was pending in state court, the United States Supreme Court decided *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242 (2002) (holding that the execution of a mentally retarded person is cruel and unusual punishment in violation of the Eighth Amendment). Shortly thereafter, Zack amended his Rule 3.850 motion to include a claim based on *Atkins*. In June 2003, the trial court denied Zack's Rule 3.850 motion, and the Florida Supreme Court affirmed this ruling on appeal. *Zack v. State*, 911 So. 2d 1190 (Fla. 2005).

Zack then proceeded to federal court, filing a federal habeas petition that raised multiple claims for relief, including a claim under *Atkins*. The district court dismissed all of Zack's non-*Atkins* claims as untimely and denied the *Atkins* claim on the merits. Zack filed a motion for a certificate of appealability, and the district court granted it as to whether Zack's non-*Atkins* claims were timely under the habeas statute of limitations. A panel of this Court vacated and remanded the case.

*Zack v. Tucker*, 666 F.3d 1265 (11th Cir. 2012). The panel stated that our prior panel precedent in *Walker* requires courts to evaluate the timeliness of federal habeas applications as a whole, and that limitations period begins to run from the latest of the triggering events established in § 2244(d)(1)(A)–(D). *Id.* at 1268. The panel held that Zack's timely assertion of his *Atkins* claim made timely all the other claims asserted in his petition. *Id.* at 1269. We vacated the panel opinion and reheard the case en banc. *Zack v. Tucker*, 678 F.3d 1203 (11th Cir. 2012).

## II. ISSUE

Whether 28 U.S.C. § 2244(d)(1) provides a single statute of limitations that applies to the application as a whole or whether the timeliness of claims must be evaluated on a claim-by-claim basis.

## III. DISCUSSION

A. *The Statute*

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996), sets forth a limitations period for state prisoners filing a 28 U.S.C. § 2254 petition.[1] This statute of limitations "quite plainly serves the well-recognized interest in the finality of state court judgments." *Duncan v. Walker*, 533 U.S. 167, 179, 121 S. Ct. 2120, 2128 (2001); *see also Jones v. United*

---

[1] AEDPA also establishes a one-year limitation period for federal prisoners in 28 U.S.C. § 2255(f).

4

*States*, 304 F.3d 1035, 1039 (11th Cir. 2002) (noting that the fixed time limit was designed to further AEDPA's "signal purpose" of bringing greater "finality [to] criminal cases"). According to the statute, a one-year period of limitations applies "to an application for a writ of habeas corpus," and it runs "from the latest of":

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D).

Relying on the plain language of the statute, Zack argues that his habeas petition was timely, under § 2244(d)(1)(C), because he filed it within one year after the Supreme Court decided *Atkins*. Zack contends that this was the latest of the four possible dates under the statute, and it marked the start of the one-year period that applied to his application. Relying heavily on this court's holding in *Walker* that the one-year limitation period applies to a petition for a writ of habeas corpus

as a whole, not to the separate claims in the petition, Zack contends that his application as a whole was timely, and the district court erred in dismissing his non-*Atkins* claims as untimely.

The State also relies on the plain language of the statute, contending that there is no ambiguity and the district court properly dismissed Zack's untimely claims—the non-*Atkins* claims. The State urges this court to view the entire statutory context, not look at one word or term in isolation. *See Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1212 (11th Cir. 2010) (citations omitted). It contends that this court, like the Supreme Court in *Pace v. DiGuglielmo*, 544 U.S. 408, 415–16, 125 S. Ct. 1807, 1813 (2005), should analyze the statute in a subsection by subsection manner rather than analyzing only the word "application" in subsection (d)(1). When carefully considering each subsection, the State asserts that the clear textual indication is that Congress meant for courts to determine timeliness based on a claim-by-claim basis. For example, subsection (C)'s reference to "*the* constitutional *right*" is clearly a reference to a singular right, § 2244(d)(1)(C) (emphasis added), and subsection (D)'s reference to "claim or claims" indicates that Congress meant for courts to determine timeliness on a claim-by-claim basis, *id.* § 2244(d)(1)(D). Furthermore, the State argues that the phrase "from the latest of" is the introduction to four separate time periods.

6

*See id*. § 2241(d)(1).  The State contends that the statute provides for one time limitation for the judgment as a whole, and has three exceptions to that time period, each of which also has a time limitation.  The State asserts that these "time limitations within time limitations" address the realities of habeas litigation, such as the effect that newly found evidence and rights newly recognized by the Supreme Court have on a habeas petitioner's quest for relief.

Alternatively, assuming that this court perceives ambiguity in the statute, the State posits that this court should interpret the statute based on practice and policy within the civil realm, of which habeas corpus is a remedy.  The normal practice in the civil litigation arena is for courts to apply statutes of limitations on a claim-by-claim basis, and the policy promoted by Congress with the passage of AEDPA was finality in criminal cases.  *See Murphy v. United States*, 634 F.3d 1303, 1309 (11th Cir. 2011) (observing that "Congress's overriding purpose in enacting AEDPA . . . [was] to achieve finality in criminal cases, both federal and state" (internal quotation marks omitted)).  The State contends that, in light of the stated purpose behind AEDPA and the ordinary application of statutes of limitation, the *Walker* interpretation that the statute of limitations should be applied to the application as a whole cannot be correct.  This interpretation would create a "loophole" in habeas jurisprudence "which is contrary to the legislative intent of insuring a greater

7

degree of finality" in criminal cases. *See id.* (internal quotation marks omitted).

Moreover, the State proffers that such an interpretation would not comport with the

practicalities of habeas litigation. Hence, the State urges this court to adopt a

claim-by-claim approach for timeliness determinations in habeas litigation and to

affirm the district court's order dismissing Zack's untimely claims in his habeas

petition.

B. *Walker v. Crosby*

As stated previously, Zack posits that his petition is timely under our *Walker*

interpretation of the habeas statute of limitations. In *Walker*, the petitioner

received a new sentence during state post-conviction proceedings and, after

exhausting state remedies, filed a federal petition challenging aspects of both his

original conviction and his new sentence. *Walker*, 341 F.3d at 1241–42. The court

framed the question as "whether individual claims within a single habeas petition

may be reviewed separately for timeliness." *Id.* at 1241. The court began its

analysis by looking to the words of the statutory provision and noted that the

statute "provides a single statute of limitations, with a single filing date, to be

applied to the application as a whole." *Id.* at 1243. The court then considered

language in *Artuz v. Bennett*, 531 U.S. 4, 121 S. Ct. 361 (2000), to draw a

distinction between the word "application" in § 2244(d)(1) and the word "claims"

as used in the statute.  *Id.*  The court reasoned that, because the statute directs courts to look at whether an "application" is timely, not whether the individual "claims" within the application are timely, "[t]he statute of limitations in § 2244(d)(1) applies to the application as a whole; individual claims within an application cannot be reviewed separately for timeliness."  *Id.* at 1244–45.

The *Walker* court stated a broader rule than was necessary to decide that appeal.  The petitioner in *Walker* filed a habeas petition that included a claim challenging his new sentence, which was timely, and other claims challenging his original conviction that, when viewed in insolation, were not timely.  *Id.* at 1241–42.  The narrow legal question presented in *Walker* involved the meaning of the word "judgment" in subsection 2244(d)(1)(A), and whether the timely assertion of the challenge to the new sentence revived the claims as to the original conviction.  All the *Walker* panel had to do was construe whether the petitioner's limitations period under that subsection began anew when his corrected sentence became final.  In *Ferreira v. Secretary, Department of Corrections*, 494 F.3d 1286, 1293 (11th Cir. 2007), we decided that narrower question and held that the statute of limitations under subsection 2244(d)(1)(A) "begins to run from the date both the conviction *and* the sentence the petitioner is serving at the time he files his application become final because judgment is based on both the conviction and the

9

sentence." In the light of *Ferreira*, the *Walker* court reached the right result for the wrong reason. In *Walker*, the challenges to both the original conviction and the new sentence were timely because the limitations period on both sets of claims presented ran from the date that both the conviction and the sentence the petitioner was serving became final. See 28 U.S.C. § 2244(d)(1)(A).

C. *Grounds for Overruling Walker*

In the light of the text and structure of the statute, Supreme Court case law, other circuits' interpretations, and Congress's intent in enacting AEDPA, we conclude that the *Walker* interpretation is incorrect. The present case is a perfect example of why the *Walker* rule is not viable. By raising one meritless claim of mental retardation based on a constitutional right newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review, Zack attempts to resurrect eight other untimely claims. Following the *Walker* interpretation and allowing such an interpretation negates the purpose of the habeas statute of limitations by increasing delays in criminal cases, which, in turn, impedes the state's interest in the finality of state court judgments. This result is contrary to Congress's purpose in enacting AEDPA. *See Duncan*, 533 U.S. at 179, 121 S. Ct. at 2128; *see also Day v. Crosby*, 391 F.3d 1192, 1194 (11th Cir. 2004) ("Congress enacted the AEDPA statute of limitations as the principal tool to serve

10

the well-recognized interest in the finality of state court judgments." (internal quotation marks and alteration omitted)). We cannot let stand a rule that undermines "the finality of criminal convictions" and gives "slim significance" to the limitation period enacted by Congress. *Mayle v. Felix*, 545 U.S. 644, 662, 125 S. Ct. 2562, 2573–74 (2005).

### 1. Text of the Statute

The text and structure of the statute suggest that the statute of limitations of § 2244(d)(1) should be applied on a claim-by-claim basis. The only way to make sense of the statutory scheme is to read the statute as applying on a claim-by-claim basis. The *Walker* interpretation of § 2244(d)(1) reads the statute in such a way that under certain circumstances it will be impossible for courts to identify the applicable statute of limitations.

Consider a circumstance where an applicant presents a petition for relief that seeks review under two separate constitutional rights newly recognized by two separate Supreme Court decisions. The statute provides that the one-year limitations period begins to run "from the latest of" four possible dates identified in subsections (A) through (D). 28 U.S.C. § 2244(d)(1). Subsection (C) — the subsection at issue in this case —provides that the statute of limitations on an application for habeas relief runs from "the date on which the constitutional right

11

asserted was initially recognized by the Supreme Court." *Id.* § 2244(d)(1)(C). The *Walker* interpretation states that a single statute of limitations applies to the application as a whole, but it does not tell a court how to identify the relevant date from which the statute of limitations begins to run. Does the one-year statute of limitations run from the date of the earlier Supreme Court decision, or the later one? Nothing in the text of subsection (C) resolves that question.

The *Walker* interpretation suggests that the limitations period runs from the date of the *later* Supreme Court decision, but this result is not what the statute provides. As the Third Circuit has explained, the reference to "the latest" date in the statute "tells a court how to choose from among the four dates specified in subsection (A) through (D) *once those dates are identified*," but the statute does not tell a court how to identify the date specified in subsection (C) in an application that contains multiple claims based on multiple newly discovered constitutional rights. *Fielder v. Varner*, 379 F.3d 113, 118 (3d Cir. 2004). "It would be just as consistent with the statutory language to pick the *earliest* date" on which a new constitutional right was recognized. *Id.* Under the *Walker* reading, subsection (C) does not even contemplate a scenario in which multiple new constitutional rights may be asserted in the same application.

12

But if § 2244(d)(1) applies on a claim-by-claim basis, none of these problems exists. The statute of limitations on each claim runs from the date of each relevant Supreme Court decision.  For this reason, the text and structure of the statute suggests that timeliness must be evaluated on a claim-by-claim basis.

2.  Supreme Court Cases

The first case that casts doubt on the *Walker* rule is *Pace v. DiGuglielmo*, in which the Supreme Court considered whether a state application for collateral review was "properly filed" under § 2244(d)(2) so as to toll the federal one-year statute of limitations.  544 U.S. at 410, 125 S. Ct. at 1810.  Under the law of Pennsylvania, where the petitioner filed his application, courts determined timeliness on a claim-by-claim basis, instead of the application as a whole.  *See id.* at 411–12, 125 S. Ct. at 1810–11.  The *Pace* petitioner argued that because § 2244(d)(2) refers to a "properly filed application," any condition that must be applied on a claim-by-claim basis, like a time limitation, cannot be a condition of filing.  *Id.* at 415–16, 125 S. Ct. at 1813.  The Supreme Court rejected petitioner's argument and cited several provisions in AEDPA where a reference to an "application" nevertheless requires a claim-by-claim analysis.  *Id.* at 415–16, 125 S. Ct. at 1813.  The Supreme Court explained that subsection 2244(d)(1)(C), the provision at issue in the present case, is one example that "require[s] claim-by-

13

claim consideration." *Id.* at 416 n.6, 125 S. Ct. at 1813 n.6. Noting that § 2244(d)(1) provides for a one-year limitation period for a habeas corpus application, the Supreme Court stated that "[t]he subsection then provides one means of calculating the limitation with regard to the 'application' as a whole, § 2244(d)(1)(A) (date of final judgment), but three others that require claim-by-claim consideration, § 2244(d)(1)(B) (governmental interference); § 2244(d)(1)(C) (new right made retroactive); § 2244(d)(1)(D) (new factual predicate)." *Id.* Although this language was not the Court's holding, but rather was dicta, we note that "dicta from the Supreme Court is not something to be lightly cast aside." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1392 n.4 (11th Cir. 1997).

*Mayle v. Felix* also casts doubt on our ruling in *Walker*. In *Mayle*, the Ninth Circuit had permitted the petitioner, who had timely filed a habeas petition, to later amend his petition under Rule 15(c)(2), Federal Rules of Civil Procedure, to include claims that would have otherwise been untimely under § 2244(d)(1)(A). 545 U.S. at 653, 125 S. Ct. at 2568. In reversing, the Supreme Court stated that the Ninth Circuit's decision undermined the purpose of Congress in enacting "AEDPA to advance the finality of criminal convictions." *Id.* at 662, 125 S. Ct. at 2573. The Court acknowledged "Congress'[s] decision to expedite collateral attacks by placing stringent time restrictions on them." *Id.* at 657, 125 S. Ct. at 2570 (internal

14

quotation marks and alteration omitted).  The Court reasoned that "[i]f claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance."  *Id.* at 662, 125 S. Ct. at 2573–74.  Because Congress enacted the limitations period in AEDPA "as the principal tool to serve the well-recognized interest in the finality of state court judgments," *Day*, 391 F.3d at 1194 (internal alteration and quotation marks omitted), *Mayle* intimates that courts should construe § 2244(d) narrowly.

3.  Other Circuit Decisions

Several of our sister circuits have rejected the *Walker* interpretation.  *See Prendergast v. Clements*, 699 F.3d 1182 (10th Cir. 2012); *Mardesich v. Cate*, 668 F.3d 1164 (9th Cir. 2012); *Souliotes v. Evans*, 622 F.3d 1173 (9th Cir.), *vacated on other grounds*, 654 F.3d 902 (9th Cir. 2011); *Bachman v. Bagley*, 487 F.3d 979 (6th Cir. 2007); *Fielder*, 379 F.3d 113.  In fact, no circuit has agreed with our reasoning in *Walker* or adopted the rule we established in that case.

The *Fielder* opinion, authored by then-Judge Alito, criticized our *Walker* rule, noting that it "fails on its own terms," and held that the statute of limitations in § 2244(d)(1) requires a claim-by-claim approach to determine timeliness.  379 F.3d at 118.  The Third Circuit noted that our court "actually disregard[ed]" the

language contained in § 2244(d)(1)(D), which refers to "the date on which the factual predicate of *the claim or claims presented* could have been discovered through the exercise of due diligence." *Id.* at 117 (quoting 28 U.S.C. § 2244(d)(1)(D)). The court stated although the *Walker* interpretation implicitly read subsection (D) to refer to "**the latest date** on which the factual predicate of **any claim presented** could have been discovered through the exercise of due diligence," *id.* at 118 (internal quotation marks omitted), this is not what the language of subsection (D) says, and in fact "[i]t would be just as consistent with the statutory language to pick the *earliest* date" on which the factual predicate of any claim accrued, *id.* Instead, the *Fielder* court stressed that subsection (D) did not say that and found that "[t]he reference to 'the latest' date in § 2244(d)(1) tells a court how to choose from among the four dates specified in subsections (A) through (D) *once those dates are identified*." *Id.*

*Fielder* looked beyond the words of § 2244(d)(1) and considered how courts ordinarily apply statutes of limitations. Explaining that statutes of limitations are applied typically on a claim-by-claim basis in civil and criminal cases, the Third Circuit reasoned that nothing indicated "that Congress intended to make a radical departure from this approach in § 2244(d)(1)." *Id.* The *Fielder* court also considered the practical implications of the *Walker* interpretation, reasoning that

16

"the *Walker* interpretation has the strange effect of permitting a late-accruing federal habeas claim to open the door for the assertion of other claims that had become time-barred years earlier." *Id.* at 120. After providing a persuasive example to illustrate its reasoning that Congress did not intend the statute of limitations to resurrect previously barred claims, the *Fielder* court surmised that Congress would not have wanted the statute of limitations to "miraculously revive[]" formerly barred claims. *Id.*

The Tenth, Ninth, and Sixth Circuits have also held that the one-year period of limitation should be applied on a claim-by-claim basis. Most recently, the Tenth Circuit rejected our *Walker* approach and noted that *Walker* "creates a perverse incentive for potential habeas petitioners with otherwise time-barred constitutional claims to violate the terms of their sentence." *Prendergast*, 669 F.3d at 1187. In *Mardesich*, the Ninth Circuit reaffirmed its earlier statement in *Souliotes* that the statute of limitations in § 2244(d)(1) applies on a claim-by-claim basis. 668 F.3d at 1170–71. The *Mardesich* court aptly stated that "[s]tretched to its logical extreme, *Walker*'s application-based approach would hold that AEDPA's statute of limitations never completely runs on *any* claim so long as there is a possibility of a timely challenge for *one* claim." *Id.* at 1171. Hence, it joined the Third Circuit in embracing a claim-by-claim approach to the statute of limitations in a multiple

17

trigger date case. *Id.* The Sixth Circuit also expressly rejected the *Walker* interpretation of § 2244(d)(1). *Bachman*, 487 F.3d at 984. Now, having the opportunity to consider the issue again, we reject the *Walker* interpretation of the statute of limitations and agree with our sister circuits that a claim-by-claim approach to the statute of limitations in a multiple trigger case is more reasoned.

4. Congressional Intent

We agree with the State that the *Walker* interpretation is also inconsistent with Congressional intent. Congress enacted AEDPA to "reduce[] the potential for delay on the road to finality by restricting the time that a prospective federal habeas petitioner has in which to seek federal habeas review." *Duncan*, 533 U.S. at 179, 121 S. Ct. at 2128. Courts should not interpret statutes in a manner that undermines the purpose of the statute. *See In re Chapman*, 166 U.S. 661, 667, 17 S. Ct. 677, 680 (1897) (stating that "nothing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion"). Our court has strictly interpreted the habeas statute of limitations "to avoid creating a loophole which is contrary to the legislative intent of insuring a greater degree of finality." *Murphy*, 634 F.3d at 1309 (internal quotation marks omitted) (giving strict interpretation to statute of limitations in Rule 35(b) modification of sentence

18

context).  The Supreme Court has also observed that the purpose of the habeas statute of limitations is to end delays in criminal cases.  *See Woodford v. Garceau*, 538 U.S. 202, 206, 123 S. Ct. 1398, 1401 (2003) (observing that "Congress enacted AEDPA to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases"); *see also Baze v. Rees*, 553 U.S. 35, 69, 128 S. Ct. 1520, 1542 (2008) (Alito, J., concurring) (noting the "seemingly endless proceedings that have characterized capital litigation").

In light of the clear intent of Congress in enacting the habeas statute of limitations, the *Walker* interpretation is not viable.  This interpretation frustrates congressional intent with respect to finality because it allows a habeas petitioner to revive otherwise untimely claims by filing a habeas petition based on either (1) a state imposed impediment to filing a claim, or (2) a new rule that applies retroactively on collateral review, or (3) the discovery of a factual predicate for a new claim.  It allows for the resuscitation of otherwise dormant claims and effectively rewards petitioners for waiting years after their convictions become final to file federal habeas petitions that mix new and timely claims with stale and untimely claims.  Such a result contradicts the well-recognized interest in the finality of state court judgments that Congress sought to achieve in enacting the habeas statute of limitations.

Moreover, the logic of *Walker* extends with equal force to the one-year limitation period in 28 U.S.C. § 2255 for federal prisoners, and the finality concerns are particularly acute in this context. Unlike state prisoners, who can capitalize on a new *constitutional* right, federal prisoners have another "new right" trigger in § 2255(f)(3). In this provision, the "new right" trigger applies to Supreme Court decisions recognizing new, retroactively applicable *statutory* rights. *See, e.g., United States v. Roberts*, 308 F.3d 1147, 1149–50 (11th Cir. 2002). The breadth of this provision poses a far greater threat to the finality of federal prisoner convictions than state prisoner convictions. In recent years, the Supreme Court has issued a number of decisions that narrowly construe a wide range of statutes defining federal crimes, all of which are retroactive to appeals on collateral review. *See, e.g., Fowler v. United States*, ___ U.S. ___, 131 S. Ct. 2045 (2011) (federal witness tampering statute); *Skilling v. United States*, ___ U.S. ___, 130 S. Ct. 2896 (2010) (honest services fraud statute); *Chambers v. United States*, 555 U.S. 122, 129 S. Ct. 687 (2009) (violent felony under Armed Career Criminal Act); *Begay v. United States*, 553 U.S. 137, 128 S. Ct. 1581 (2008) (violent felony under Armed Career Criminal Act); *United States v. Santos*, 553 U.S. 507, 128 S. Ct. 2020 (2008) (money laundering statute); *Watson v. United States*, 552 U.S. 74, 128 S. Ct. 579 (2007) (firearm statute). These decisions have spawned extensive

20

federal prisoner post-conviction litigation, and the *Walker* interpretation compounds this complex litigation and contradicts the purpose of the statute of limitations in AEDPA: finality of judgment.

## IV. CONCLUSION

We overrule *Walker* to the extent that it holds that § 2244(d)(1) provides a single statute of limitations that applies to the application as a whole and that individual claims within an application cannot be reviewed separately for timeliness. We are "confident Congress did not want to produce" a result in which a timely claim "miraculously revive[s]" untimely claims. *Fielder*, 379 F.3d at 120. Accordingly, we hold that the statute of limitations in AEDPA applies on a claim-by-claim basis in a multiple trigger date case. We see no reason why a habeas petitioner who allows his judgment to become final should be permitted, by the happenstance of an intervening decision or the discovery of new evidence, to reopen claims that he could have raised earlier but did not. Thus, we affirm the district court's judgment dismissing Zack's non-*Atkins* claims as time-barred.

**AFFIRMED**.

21

CARNES, Circuit Judge, concurring:

I fully concur in the Chief Judge's opinion for the Court and write separately to elaborate on what will-o'-the-wisp, tissue-thin, non-bars the AEDPA statute of limitations provisions would be if the Court did not hold as it does today.

During oral argument, petitioner's counsel was asked these questions and gave these answers:

> The Court: Let me ask you one thing that concerns me about your position, Mr. McClain, and I didn't really see it addressed much in the briefs. And that is the unlocking claim, in this case, the Atkins claim. How much merit does it have to have to unlock the statute as to the other claims?
>
> Counsel: Well, under the statutory language, it's whether the claim— when does the claim arise?
>
> The Court: No. No. I mean, suppose—you don't like the Mensa hypothetical—let's give you another one. Suppose, under Miller v. Alabama, someone who was twenty-one years old according to the birth certificate at the time they committed the murder got a mandatory life without parole. Twenty years later, after Miller comes out, they file a Miller claim and eight other claims that have nothing to do with Miller. And the state responds, "He was twenty-one." And the guy says, "No I wasn't." Judge holds a hearing; he was clearly twenty-one at the time. Miller is inapplicable. The claim has no merit. Do the other eight claims still get under the fence for the statute of limitation purposes?
>
> Counsel: Under the text of the statute, the merits are not at issue.
>
> The Court: Okay, so any time any Supreme Court decision comes out, anybody—particularly somebody on death row, let's say, or

22

serving life without parole, got nothing to lose—they file a false and frivolous claim as to that new decision and then everything else comes in under the statute of limitations for it?

Counsel:  Under the text, that's correct.

Counsel's answers show that at the frontier of the absurd there are no border guards.

Adopting the petitioner's interpretation of the statutory language would mean that every time the Supreme Court issued a decision recognizing a new, retroactively applicable constitutional right, the statute of limitations bar would be lifted for any and all other claims a petitioner wished to bring.  And that would be true no matter how old those other claims were, no matter how unrelated they were to the new law claim, and no matter how baseless the new law claim was in that case.

Two examples illustrate the absurdity of the petitioner's interpretation.  Under it, any petitioner could have used the decision in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242 (2002), to lift the statute of limitations bar on any and all non-Atkins claims, even if the petitioner had an IQ in the genius range and even if he were not under a sentence of death, making the Atkins claim doubly frivolous.  And the Supreme Court's decision in Miller v. Alabama, 132 S.Ct. 2455 (2012), could be used by any

23

petitioner to lift the statute of limitations bar for any and all otherwise time-barred, non-Miller claims he wants to assert, even if he is not serving a life imprisonment without parole sentence and even if he was not a juvenile when he committed his crimes, making the Miller claim doubly frivolous.

The petitioner's position is contrary to "the common mandate of statutory construction to avoid absurd results," Rowland v. California Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 200, 113 S.Ct. 716, 200 (1993); see Corley v. United States, 55 U.S. 303, 317, 129 S.Ct. 1558, 1568 (2009) (interpreting a statute to avoid "the absurdities of literalism that show that Congress could not have been writing in a literalistic frame of mind"); E.E.O.C. v. Commercial Office Products Co., 486 U.S. 107, 120-121, 108 S.Ct. 1666, 1674 (1988) (rejecting an interpretation that would lead to "absurd or futile results . . . plainly at variance with the policy of the legislation as a whole, which this Court need not and should not countenance") (quotation marks omitted); United States v. Turkette, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527 (1981) ("[A]bsurd results are to be avoided" in statutory construction.); Miedema v. Maytag Corp., 450 F.3d 1322, 1326 (11th Cir. 2006) (It is a "venerable" principle that "statutory

language should not be applied literally if doing so would produce an absurd result.").

There is enough unavoidable absurdity in life.  We should avoid absurdity in the law.  Today's decision does.