[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10532
Non-Argument Calendar
_____

D.C. Docket No. 0:13-cv-62472-WPD


ARTHUR THOMPSON,

Petitioner-Appellant,


versus


FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 30, 2015)

Before TJOFLAT, HULL and WILSON, Circuit Judges.

PER CURIAM:

Arthur Thompson, a Florida prisoner proceeding pro se, appeals the district court's dismissal of his 28 U.S.C. § 2254 habeas corpus petition as time-barred. Thompson's original 1991 sentence was wholly vacated and he was resentenced on October 6, 2011. His new sentence was affirmed on direct appeal on May 1, 2013. On November 1, 2013, Thompson filed this § 2254 petition. After careful review of the record and briefs, we conclude Thompson's § 2254 petition was timely filed. Thus, we vacate and remand for further proceedings consistent with this opinion.

## I.  BACKGROUND

To resolve this appeal, we first review in detail the lengthy procedural history of Thompson's case.

### A.    1991-1993, Convictions, Sentences, and Direct Appeal

On March 22, 1989, during the night, Thompson entered, uninvited, the home of Solange Boulianne in Pembroke Park, Florida, to steal money for drugs. According to the trial evidence, including Thompson's tape-recorded confession, the victim Boulinanne woke and discovered Thompson in her home. Thompson then strangled her to death.

On July 22, 1991, a Florida jury found Thompson guilty of first-degree murder, burglary with assault or battery, and robbery. On August 29, 1991, the

2

state trial court sentenced Thompson, as a habitual felony offender, to consecutive sentences of life imprisonment for the murder conviction, life imprisonment for the burglary conviction, and 30 years' imprisonment for the robbery conviction. For his murder conviction, Thompson was required to serve a 25-year statutory mandatory minimum before becoming eligible for parole. Thompson's prior criminal history, that qualified him as a habitual felony offender, included felony convictions of burglaries of a dwelling, possession of cocaine, and grand theft.[1] He also had prior misdemeanor convictions of resisting arrest, trespassing, and loitering and prowling.

Relevant here, the Florida sentencing guidelines scoresheet, prepared in connection with Thompson's sentencing, indicates that he received an above-guidelines sentence (life) for his burglary conviction. The "recommended sentence" for his burglary conviction was 9 to 12 years and the "permitted sentence" was 7 to 17 years.

Thompson directly appealed, raising the sole claim that a pre-trial motion to suppress his tape-recorded statements was wrongfully denied. On March 17, 1993, the Florida appellate court summarily affirmed Thompson's convictions and

---

[1]In July 1988, Thompson was convicted of burglary of a dwelling and sentenced to two-and-a-half-years' imprisonment. On December 16, 1988, he was released to supervised community release. He was then discharged from supervised release on February 24, 1989. On March 22, 1989, he committed the instant murder, burglary, and robbery offenses.

3

sentences on direct appeal.  Thompson v. State, 615 So. 2d 170 (Fla. Dist. Ct. App. 1993) (table).

## B.    1995-1999, State Collateral Proceedings

After his direct appeal, between 1995 and 1999, Thompson sought collateral relief in the state courts through multiple filings, including two state habeas petitions and a Florida Rule of Criminal Procedure 3.800 motion to correct an illegal sentence.  All of these collateral filings were ultimately denied.

## C.    2000-2001, First § 2254 Proceedings

On June 22, 2000, Thompson filed his initial § 2254 petition, raising these claims: (1) the state trial court erred by denying a defense challenge to a venire member; (2) his Confrontation Clause and due process rights were violated when the trial court granted the State's request to perpetuate the testimony of the forensic pathologist who performed the victim's autopsy; (3) his due process rights were violated when the trial court made prejudicial comments to the jury; (4) he received ineffective assistance of appellate counsel when his lawyer failed to raise a number of properly preserved issues on appeal;[2] (5) the trial court erred in admitting his confession, and he received ineffective assistance of counsel when

---

[2]In particular, Thompson contended that appellate counsel should have raised the claims included by trial counsel in a motion for a new trial.  Thompson's motion for a new trial raised several of the claims included in his § 2254 petition, including Claims 1, 2, and 3 listed above, and claims that the trial court erred by refusing (1) to delete three highly prejudicial passages of Thompson's tape-recorded statements, (2) to grant a judgment of acquittal based on insufficient evidence, (3) to compel the State to grant defense witness Lisa Giallanza immunity, and (4) to give the jury a special instruction on voluntary intoxication.

4

his appellate attorney inadequately argued this issue on direct appeal; (6) his due process and equal protection rights were violated when the trial court sentenced him in excess of the statutory maximum; and (7) in his first state habeas proceeding, the State improperly moved for rehearing following the state habeas court's initial opinion and the state habeas court improperly recalled the mandate and withdrew its initial opinion.

Following the State's response, the magistrate judge issued a report ("R&R"), recommending that Thompson's § 2254 petition be denied on the merits. Some of Thompson's claims failed to allege a constitutional error cognizable on federal habeas review. As to his remaining claims, Thompson had not shown that the Florida courts, in denying relief, had reached a result that was contrary to, or an unreasonable application of, clearly established federal law.

On May 31, 2001, overruling Thompson's objections, the district court adopted the R&R and denied Thompson's § 2254 petition. Thompson did not appeal.

**D.    2006-2008, First Resentencing and Direct Appeal**

On September 11, 2006, Thompson filed in the state trial court a Rule 3.800(a) motion to correct an illegal sentence, challenging his burglary and robbery sentences. Thompson v. State, 987 So. 2d 727, 728 (Fla. Dist. Ct. App. 2008). Thompson sought relief based on Hale v. State, 630 So. 2d 521 (Fla. 1993), which

5

held that habitual felony offender sentences cannot run consecutively to each other when the offenses occur in a single criminal episode.[3]

Based on Thompson's Rule 3.800(a) motion, "[t]he trial court deleted the [habitual felony offender] designation from all three sentences and reduced the 30-year robbery sentence to 15 years, the statutory maximum sentence for a second-degree felony without enhancement. Otherwise, the sentences were unchanged." Thompson, 987 So. 2d at 728. The three sentences still remained consecutive.

Thompson appealed, arguing for a de novo resentencing hearing on the basis that his consecutive life sentence on his burglary conviction was still above his Florida sentencing guidelines range. Id. On June 25, 2008, the Florida appellate court reversed and remanded. Id. at 729. The appellate court noted that, at Thompson's original sentencing, it was only his designation as a habitual felony offender that permitted the trial court to sentence him above the guidelines on his burglary conviction. Id. at 728. Thus, "when the trial court deleted the [habitual felony offender] designation, there was no justification for a sentence above the guidelines." Id. at 729. Accordingly, the Florida appellate court remanded for the state trial court to conduct a de novo resentencing hearing to consider whether a

---

[3]In Hale, the Florida Supreme Court distinguished "statutory sentences in which the legislature ha[s] included a minimum mandatory sentence, such as the sentences for capital crimes, from sentences in which there is no minimum mandatory penalty although one may be provided as an enhancement through the habitual violent offender statute." Hale, 630 So. 2d at 524.

6

sentence above the guidelines was justified for the burglary conviction and, if so, to give reasons for imposing a departure sentence.  Id.

### E.    2011-2013, Second State Resentencing and Direct Appeal

Following the remand, on October 6, 2011, the state trial court resentenced Thompson and entered multiple orders.  The first 2011 resentencing order stated that "[t]he sentence imposed on 8-29-91 is hereby vacated and set aside."

The trial court then entered new sentences as to each conviction, in separate three-page orders titled "Sentence" that specified the sentence of imprisonment and special provisions (such as prison credit for time already served).  Each "Sentence" order stated that "the Court having previously entered a judgment in this case on the defendant now resentences the defendant."

The 2011 resentencing orders sentenced Thompson to life imprisonment for the murder conviction, life imprisonment for the burglary conviction, and 15 years' imprisonment for the robbery conviction—the same terms of imprisonment imposed following Thompson's 2006 Rule 3.800(a) motion.  This time, however, the 2011 resentencing orders stated that the sentences on the burglary and robbery convictions would run concurrently to each other but consecutively to the sentence on the murder conviction.  The state trial court also prepared a new sentencing guidelines scoresheet, which noted, as the reason for the upward departure on the burglary conviction, the fact that Thompson was simultaneously convicted of a

7

capital murder offense.  Finally, the 2011 resentencing orders also included an order committing Thompson to the custody of the Florida Department of Corrections.

Thompson appealed from his October 6, 2011 resentencing.  On May 1, 2013, the Florida appellate court summarily affirmed.  Thompson v. State, 113 So. 3d 17 (Fla. Dist. Ct. App. 2013) (table).

## F.    2012-2013, Rule 3.850 Motion in State Court

On February 7, 2012, while his direct appeal from his October 2011 resentencing was pending, Thompson filed in the state trial court a Florida Rule of Criminal Procedure 3.850 motion for postconviction relief based on newly discovered evidence.  Thompson alleged that newly discovered evidence demonstrated that the State's two lead investigators lied at trial and during depositions concerning their employment histories and disciplinary records. Thompson argued that, had he been aware of the newly discovered evidence at trial, he would have proceeded under a defense theory that the investigators coerced a false confession from him.

The State responded that Thompson's Rule 3.850 motion should be denied because Thompson failed to show that he could not have timely discovered the evidence through due diligence, as he "relie[d] on facts which have been available in the public record of the relevant police agency for some twenty . . . years."

8

On June 20, 2012, the state trial court denied Thompson's Rule 3.850 motion "for the reasons given in the State's response." Thompson appealed. On March 28, 2013, the Florida appellate court summarily affirmed. Thompson v. State, 110 So. 3d 467 (Fla. Dist. Ct. App. 2013) (table).

## G.    2013-2014, Second § 2254 Proceedings

On November 1, 2013, Thompson filed the present § 2254 petition, raising multiple challenges to his convictions and a single claim as to his sentences. Specifically, Thompson asserted these claims: (1) as shown by newly discovered evidence, the State violated Brady[4] and Giglio[5] by failing to disclose the accurate employment histories of the two lead investigators, which denied him the Sixth Amendments rights to confrontation, compulsory process of witnesses, and effective assistance of counsel; (2) he received ineffective assistance of counsel when trial counsel failed (a) to move for a judgment of acquittal based on insufficient evidence and (b) to object to a "stealth entry" jury instruction; and (3) at sentencing, the trial court violated Apprendi[6] when it imposed an upward departure based on an "unscored capital murder charge," a fact not found by a jury.

A magistrate judge issued an R&R, recommending that Thompson's § 2254 petition be dismissed. The R&R did not acknowledge Thompson's 2011

---

[4]Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963).

[5]Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763 (1972).

[6]Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000).

9

resentencing.  The R&R concluded that his current § 2254 petition was both impermissibly successive and untimely.

On December 9, 2013, overruling Thompson's objections, the district court adopted the R&R in part and dismissed Thompson's § 2254 petition as untimely. The district court found (1) that Thompson's resentencing meant that his current § 2254 petition was not "second or successive"; but (2) that his § 2254 petition was time-barred because, based on Zack v. Tucker, 704 F.3d 917 (11th Cir. 2013) (en banc), "[t]he Eleventh Circuit now follows a claim by claim approach in determining timeliness."

As to Thompson's convictions claims, the district court determined that his convictions became final in 1997 and that more than one year of untolled time elapsed before Thompson filed his current § 2254 petition in 2013.  Thompson had not advanced a basis for equitable tolling, and he had not shown due diligence in discovering his alleged newly discovered evidence.  In any event, the alleged new evidence was merely impeaching, did not show a Brady violation, and did not demonstrate prejudice.

As to Thompson's sentencing claim, the district court noted that his 2011 resentencing "[a]rguably . . . re-started the one year statute of limitations, but only as to that sentencing issue."  The district court did not further discuss Thompson's sentencing claim.

10

On January 3, 2014, within 28 days of the district court's dismissal of his § 2254 petition, Thompson filed a Federal Rule of Civil Procedure 60(b) motion for relief from judgment. Thompson argued that the district court had misunderstood the procedural history of his case and the effect of his 2011 resentencing on the statute of limitations for a § 2254 petition. He contended that his entire § 2254 petition was timely with respect to the date when the direct review of his 2011 resentencing concluded.[7]

On January 14, 2014, the district court denied Thompson's Rule 60(b) motion. The district court found (1) that Thompson's 2011 resentencing "only re-started the statute of limitations on the Apprendi claim"; and (2) that the Apprendi claim was meritless. The district court observed that "the reason given by [the state trial court] for an aggravation above the guidelines (an unscored capital conviction) was found by the jury" and, "even if the nonhomicide counts were vacated, Thompson still would have to serve the life sentence on the murder charge." The district court again stated that Thompson's convictions claims were time-barred. The district court denied Thompson a certificate of appealability ("COA").

---

[7]Although Thompson labeled his post-judgment motion as a Rule 60(b) motion, it is arguably more properly construed as a Federal Rule of Civil Procedure 59(e) motion to alter or amend the judgment. See Finch v. City of Vernon, 845 F.2d 256, 258 (11th Cir. 1988). In any event, whether construed as a Rule 60(b) or Rule 59(e) motion, Thompson's motion served to toll the time to appeal the underlying denial of his § 2254 petition. See Fed R. Civ. P. 59(e); Fed. R. App. P. 4(a)(4)(A)(iv), (vi).

11

Thompson filed a timely notice of appeal.  This Court granted him a COA

on this issue: "Whether the district court erred in dismissing Thompson's instant

28 U.S.C. § 2254 petition as untimely filed."

## II.  STANDARD OF REVIEW

We review de novo the dismissal of a habeas petition as untimely.

Spottsville v. Terry, 476 F.3d 1241, 1243 (11th Cir. 2007).

## III.  DISCUSSION

### A.    Statute of Limitations for Habeas Petitions

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

imposes a statute of limitations for all prisoners "in custody pursuant to the

judgment of a State court" filing a federal habeas petition.  28 U.S.C. § 2244(d)(1).

According to the statute, a one-year period of limitations runs "from the latest of":

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

12

Id. § 2244(d)(1)(A)-(D).

The Supreme Court has explained that, for purposes of § 2244(d)(1)(A), the final judgment means the sentence. Burton v. Stewart, 549 U.S. 147, 156, 127 S. Ct. 793, 798 (2007). Thus, a state prisoner's AEDPA limitations period does not begin to run until both his conviction and sentence become final by the conclusion of direct review or the expiration of the time for seeking such review. Id. at 156-57, 127 S. Ct. at 799.

To understand the application of § 2244(d)(1) to Thompson's current § 2254 petition, it is necessary to discuss our precedents in Walker v. Crosby, 341 F.3d 1240 (11th Cir. 2003), overruled by Zack v. Tucker, 704 F.3d 917 (11th Cir. 2013) (en banc), and Ferreira v. Secretary, Department of Corrections, 494 F.3d 1286 (11th Cir. 2007), and how they were affected by our en banc decision in Zack v. Tucker. We also review the relevant precedents in Magwood v. Patterson, 561 U.S. 320, 130 S. Ct. 2788 (2010), and Insignares v. Secretary, Florida Department of Corrections, 755 F.3d 1273 (11th Cir. 2014).

## B.    **Walker v. Crosby**

In Walker, the petitioner, a state prisoner, was convicted and sentenced in state court in 1990. 341 F.3d at 1241. After an unsuccessful direct appeal and multiple unsuccessful collateral motions, in 1997, the state trial court granted the petitioner's post-conviction motion to correct his sentence. Id. In 1998, the

13

petitioner was resentenced. Id. The petitioner directly appealed from his resentencing and filed various applications for state post-conviction or other collateral review, all of which were denied. Id. at 1241-42. In 2001, the petitioner filed a § 2254 petition raising claims as to both his corrected state sentence and his unaltered state conviction. Id. The district court dismissed the § 2254 petition as time-barred. Id. at 1242.

This Court granted a COA on whether individual claims within a single habeas petition may be reviewed separately for timeliness and whether the district court properly dismissed the § 2254 petition as untimely. Id. at 1241. Reasoning that "[§] 2244(d)(1) states the limitation period shall apply to 'an application for a writ of habeas corpus,'" this Court held that "[t]he statute of limitations in § 2244(d)(1) applies to the application as a whole; individual claims within an application cannot be reviewed separately for timeliness." Id. at 1245. This Court acknowledged that this interpretation of § 2244(d)(1) "allow[ed] for the resurrection of what seem to be time-barred claims tagging along on the coattails of a timely claim" but concluded that the interpretation was compelled by the plain language of the statute. Id. at 1247.

As to the timeliness of the state prisoner's § 2254 petition, this Court in Walker concluded that the habeas petition was timely filed under § 2244(d)(1)(A) with respect to the date on which the petitioner's resentencing judgment became

14

final. Id. at 1246. "[U]nder § 2244(d)(1)(A) the statute of limitations for a habeas application challenging a resentencing court's judgment begins to run on the date the resentencing judgment became final and not the date the original judgment became final." Id. The state prisoner's resentencing judgment did not become final by the conclusion of direct review until June 1998, after which his properly filed state collateral motions tolled his AEDPA limitations period. Id. This Court determined that, with the resentencing judgment and the statutory tolling, the state prisoner's 2001 § 2254 petition was filed within the one-year limitations period provided in § 2244(d)(1). Id.

Because the petitioner in Walker raised claims challenging both his original judgment of conviction and his resentencing judgment, this Court did not address the application of § 2244(d)(1)(A) to a § 2254 petition, following a resentencing, that includes only claims concerning the original conviction and does not include any claims based on the corrected sentence. We addressed that issue in Ferreira.

## C.    Ferreira v. Secretary, Department of Corrections

In Ferreira, the petitioner, a state prisoner, was convicted and sentenced in state court in 1997. 494 F.3d at 1288, 1292. Following his direct appeal, the petitioner filed an unsuccessful state post-conviction motion. Id. at 1288. Then, in 2002, the petitioner filed another state post-conviction motion to correct his sentence, which the state court granted. Id. In 2003, the state court resentenced

15

the petitioner.  Id.  Also in 2003, less than two months after his new sentence became final, the petitioner filed a § 2254 petition that included claims challenging only his original conviction in 1997 and not his subsequent resentencing.  Id.  The district court dismissed the § 2254 petition as untimely.  Id.

On appeal, we considered whether AEDPA's statute of limitations was triggered by the petitioner's original conviction in 1997 or his resentencing in 2003, given that his § 2254 petition challenged only his original 1997 conviction. Id. at 1292.  We held, based on the Supreme Court's decision in Burton, that "AEDPA's statute of limitations begins to run when the judgment pursuant to which the petitioner is in custody, which is based on both the conviction and the sentence the petitioner is serving, is final."  Id. at 1293.  Thus, this Court indicated, where a resentencing results in a new judgment, the new judgment restarts the statute of limitations.  See id. at 1292-93.[8]

As to the petitioner in Ferreira, this Court concluded that, when he filed his 2003 § 2254 petition, he was in custody pursuant to the 2003 judgment, which was based on both his 1997 conviction and the 2003 sentence.  Id. at 1292.  Therefore, the 2003 judgment that imprisoned the petitioner "control[led] the statute of

---

[8]Of course, not all post-judgment changes or corrections to a sentence result in a new "judgment" for purposes of § 2244(d)(1)(A). Cf., e.g., Murphy v. United States, 634 F.3d 1303, 1309-14 (11th Cir. 2011) (holding, as to the AEDPA statute of limitations for a federal prisoner's motion to vacate in 28 U.S.C. § 2255(f), that a Federal Rule of Criminal Procedure 35(b) sentence reduction did not change the date when the prisoner's conviction became final because a Rule 35(b) reduction does not affect the finality of the judgment of conviction and does not constitute a resentencing in which an old sentence is invalidated and replaced with a new one).

16

limitations for [his] petition because the period begins to run when both the conviction <u>and</u> sentence are final." <u>Id.</u> at 1292-93.  The petitioner's § 2254 petition was timely under AEDPA because it was filed within one year of the 2003 judgment becoming final.  <u>Id.</u> at 1293.

**D.     <u>Zack v. Tucker</u>**

<u>Zack</u> was decided in 2013, and the State contends <u>Zack</u> "cast into doubt" not only <u>Walker</u>, but also <u>Ferreira</u>.  Thus, we review <u>Zack</u> in great detail.

In <u>Zack</u>, the petitioner was convicted of first-degree murder, sexual battery, and robbery, and he was sentenced to death.  704 F.3d at 918.  His convictions and sentence became final in October 2000.  Over a year later, in December 2001, the petitioner filed a state post-conviction motion.  <u>Id.</u>  While the post-conviction motion was pending, the Supreme Court decided <u>Atkins v. Virginia</u>, 536 U.S. 304, 122 S. Ct. 2242 (2002), holding that the execution of an intellectually disabled person violated the Eighth Amendment.  <u>Zack</u>, 704 F.3d at 918-19.  The petitioner amended his post-conviction motion to include an <u>Atkins</u> claim.  <u>Id.</u> at 919.  The state trial court denied the post-conviction motion and the Florida Supreme Court affirmed.  <u>Id.</u>

The petitioner then filed a § 2254 petition raising multiple claims, including the <u>Atkins</u> claim.  <u>Id.</u>  The district court dismissed all of the non-<u>Atkins</u> claims as untimely and denied the <u>Atkins</u> claim on the merits.  <u>Id.</u>  The district court found

that the petitioner's non-Atkins claims were untimely with respect to the date when his judgment became final because, as of "the one-year anniversary of [his] conviction[s] becoming final, [he] had filed no state or federal application for collateral review." Zack v. Crosby, 607 F. Supp. 2d 1291, 1293 (N.D. Fla. 2008). The petitioner's Atkins claim was timely because, with statutory tolling, less than one year passed between the Atkins decision and the filing of his § 2254 petition. Id. at 1295.

On appeal, sitting en banc, this Court considered whether § 2244(d)(1) provides a single statute of limitations that applies to the § 2254 petition as a whole or whether the timeliness of claims must be evaluated on a claim-by-claim basis. Zack, 704 F.3d at 919. Notably, Zack did not involve a resentencing or a new judgment. Rather, Zack concerned whether a state prisoner can resurrect § 2254 claims that are untimely with respect to the date when his state judgment became final (§ 2244(d)(1)(A)) by piggybacking them on a new claim (Atkins) that is timely with respect to another trigger in § 2244(d)(1), such as a newly recognized, retroactively applicable constitutional right (§ 2244(d)(1)(C)). See id. at 925.

In Zack, the en banc Court held that, in "a multiple trigger date case," the statute of limitations in AEDPA applies on a claim-by-claim basis. Id. at 926. The multiple trigger dates in Zack were: (1) for the petitioner's non-Atkins claims, one year from when the judgment became final, as provided by § 2244(d)(1)(A); and

18

(2) for the petitioner's new <u>Atkins</u> claim, one year from the date on which the Supreme Court initially recognized a new constitutional right, as provided by § 2244(d)(1)(C).  <u>See</u> <u>id.</u> at 919-20.  Thus, the en banc Court overruled <u>Walker</u> to the extent that it held (1) "that § 2244(d)(1) provides a single statute of limitations that applies to the application as a whole" and (2) "that individual claims within an application cannot be reviewed separately for timeliness."  <u>Id.</u> at 926.  As to the petitioner in <u>Zack</u>, the en banc Court affirmed the district court's judgment dismissing his non-<u>Atkins</u> claims as time-barred.  <u>Id.</u>

The en banc Court reasoned that (1) the text and structure of § 2244(d)(1) suggest that it should be applied on a claim-by-claim basis; (2) subsequent Supreme Court cases had cast doubt on the <u>Walker</u> rule; (3) no sister circuit had agreed with this Court's reasoning in <u>Walker</u> or adopted the rule this Court established in that case; and (4) the <u>Walker</u> rule was inconsistent with Congress's intent in enacting AEDPA.  <u>Id.</u> at 921-26.

Relevant here, as to Supreme Court case law, the en banc Court noted that the Supreme Court had stated, albeit in dicta, that § 2244(d)(1) "'provides one means of calculating the limitation with regard to the application as a whole, § 2244(d)(1)(A) (date of final judgment), but three other[ means] that require claim-by-claim consideration, § 2244(d)(1)(B) (governmental interference); § 2244(d)(1)(C) (new right made retroactive); § 2244(d)(1)(D) (new factual

19

predicate).'" Id. at 923 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 416 n.6, 125 S. Ct. 1807, 1813 n.6 (2005)) (internal quotation omitted).

As to Congressional intent, the en banc Court noted that the Walker rule frustrated AEDPA's interest in the finality of state court judgments by allowing a habeas petitioner to revive otherwise untimely claims by filing a § 2254 petition based on a state-imposed impediment to filing a claim, a new right that applies retroactively on collateral review, or the discovery of a new factual predicate for a new claim. Id. at 925 ("[The Walker interpretation] allows for the resuscitation of otherwise dormant claims and effectively rewards petitioners for waiting years after their convictions become final to file federal habeas petitions that mix new and timely claims with stale and untimely claims.").

The en banc Court explained that the Walker court had "stated a broader rule than was necessary to decide that appeal." Id. at 921. The en banc Court determined that the "narrow legal question presented in Walker involved the meaning of the word 'judgment' in subsection 2244(d)(1)(A), and whether the timely assertion of the challenge to the new sentence revived the claims as to the original conviction." Id. Consequently, "[a]ll the Walker panel had to do was construe whether the petitioner's limitations period under that subsection began anew when his corrected sentence became final." Id.

20

The en banc Court in <u>Zack</u> noted that this Court "decided that narrower question" in <u>Ferreira</u>, holding there that "the statute of limitations under subsection 2244(d)(1)(A) 'begins to run from the date both the conviction and the sentence the petitioner is serving at the time he files his application become final because judgment is based on both the conviction and the sentence.'" <u>Id.</u> (quoting <u>Ferreira</u>, 494 F.3d at 1293). The en banc Court concluded that, "[i]n the light of <u>Ferreira</u>, the <u>Walker</u> court reached the right result for the wrong reason. In <u>Walker</u>, the challenges to both the original conviction and the new sentence were timely because the limitations period on both sets of claims presented ran from the date that both the conviction and the sentence the petitioner was serving became final." <u>Id.</u> (citing 28 U.S.C. § 2244(d)(1)(A)).[9]

In discussing why <u>Walker</u>'s result was right for the wrong reason, the en banc Court in <u>Zack</u> did not disavow <u>Ferreira</u> and certainly did not overrule <u>Ferreira</u>.

---

[9]There is arguably a circuit split as to this issue. <u>See</u> <u>Prendergast v. Clements</u>, 699 F.3d 1182, 1185-88 (10th Cir. 2012) (holding that a state prisoner's conviction claims, raised in a § 2254 petition that was timely with respect to the prisoner's resentencing, were not "resuscitate[d]" by his timely sentencing claims and thus were time-barred); <u>Bachman v. Bagley</u>, 487 F.3d 979, 980-81, 982-85 (6th Cir. 2007) (holding, as to a state prisoner's § 2254 petition filed following a post-conviction proceeding in which the prisoner was designated a "sexual predator" based on a change in Ohio's sex offender registration law, that the sexual-predator designation started a new statute of limitations period only as to challenges to that designation, not as to challenges to his convictions).

21

**E.    Magwood and Insignares**

Two other recent decisions bear note before we analyze Thompson's § 2254 petition.  The Supreme Court in Magwood held that, "where . . . there is a new judgment intervening between two habeas petitions, an application challenging the resulting new judgment is not second or successive" for purposes of the restrictions on second or successive habeas petitions in 28 U.S.C. § 2244(b).  561 U.S. at 341-42, 130 S. Ct. at 2802 (citation and quotation omitted).  In Magwood, the state prisoner's second habeas petition challenged only his new sentence, and the Supreme Court expressly left open the question of whether a subsequent petition challenging the undisturbed conviction would be second or successive after the State imposes only a new sentence.  Id. at 342, 130 S. Ct. at 2802-03.

This Court decided that question in Insignares, holding that, "when a habeas petition is the first to challenge a new judgment, it is not 'second or successive,' regardless of whether its claims challenge the sentence or the underlying conviction."  755 F.3d at 1281 (emphasis added).  This Court noted, however, that "[w]hile such a petition is not subject to AEDPA's restrictions on 'second or successive' petitions, AEDPA's other limitations still apply," including for instance procedural-default rules and, as to previously decided claims, the law-of-the-case doctrine.  See id. at 1281 n.9.

22

**F.    Timeliness of Thompson's Current § 2254 Petition**

Turning to Thompson's current § 2254 petition, we conclude that, based on our binding precedent in Ferreira, the district court erred in dismissing the petition as untimely under § 2244(d)(1).  As an initial matter, we conclude that Thompson's 2011 resentencing resulted in a new judgment.  The 2011 resentencing orders entered by the state trial court in this case, following a de novo resentencing hearing, expressly vacated Thompson's 1991 sentences and imposed new sentences.  Although Thompson's resentencing did not alter his original convictions, the 2011 judgment, for the purposes of § 2244(d)(1)(A), comprised both his convictions and sentences.  See Burton, 549 U.S. at 156-57, 127 S. Ct. at 798-99; Ferreira, 494 F.3d at 1292-93.

Thus, when Thompson filed his 2013 § 2254 petition, he was in state custody pursuant to the new 2011 judgment entered upon his resentencing.  The new 2011 judgment triggered a new statute of limitations period, which began to run when the 2011 judgment became final.  See Ferreira, 494 F.3d at 1292-93.  Thompson directly appealed from the 2011 judgment, and the Florida appellate court affirmed on May 1, 2013.  Accordingly, Thompson's § 2254 petition, filed on November 1, 2013, was filed within one year of the 2011 judgment becoming final at the conclusion of direct review.  See 28 U.S.C. § 2244(d)(1)(A); Burton, 549 U.S. at 156-57, 127 S. Ct. at 799.

23

The district court below, as well as the State on appeal, relied on Zack to reason that this Court "now follows a claim by claim approach in determining timeliness" under § 2244(d)(1).  Thus, the district court reasoned, Thompson's "resentencing would have triggered a new one year statute of limitations, but only on the sentencing issues involved at that resentencing."  However, Zack is materially distinguishable from this case.  Critically, Zack did not involve a new judgment entered upon a resentencing.  Rather, Zack concerned a petitioner who attempted to raise claims in a § 2254 petition that were untimely with respect to when his judgment became final by piggybacking them on a new Atkins claim based on a newly recognized Supreme Court right under § 2244(d)(1)(C).  See Zack, 704 F.3d at 919.  The en banc Court in Zack held that, in a multiple trigger date case—when separate claims have different trigger dates for the running of the statute of limitations—the statute of limitations in AEDPA applies on a claim-by-claim basis.  Zack, 704 F.3d at 926.

Unlike the petitioner in Zack, all of Thompson's claims relate to a single judgment—a judgment that is based on both Thompson's convictions and his sentences—that became final less than one year before he filed his § 2254 petition.  Thus, the statute of limitations for Thompson's petition was provided entirely by § 2244(d)(1)(A), running from a single trigger date when the 2011 judgment became final.

24

Notably, Thompson's § 2254 petition is not a "multiple trigger date case" within the meaning of Zack. See id. at 926. Although Thompson alleged claims based on newly discovered factual predicates, his § 2254 petition was timely with respect to the date when the judgment pursuant to which he was in custody became final, and thus, his statute of limitations is properly calculated under only § 2244(d)(1)(A). See Ferreira, 494 F.3d at 1292-93.[10]

For the above reasons, and based on our binding precedent in Ferreira, we vacate and remand the district court's dismissal of Thompson's § 2254 petition as time-barred for further proceedings consistent with this opinion.[11] Although we conclude that Thompson's § 2254 petition is not time-barred, nothing herein should preclude the district court from evaluating whether there are other procedural hurdles that Thompson must overcome. See Insignares, 755 F.3d at 1281 n.9.

**VACATED and REMANDED.**

---

[10]We do not consider the State's arguments that Thompson's claims all fail on the merits and that his § 2254 petition should be dismissed in part as second or successive with respect to his convictions claims, as these issues are not within the scope of the COA. See Murray v. United States, 145 F.3d 1249, 1251 (11th Cir. 1998) (holding that, "in an appeal brought by an unsuccessful habeas petitioner, appellate review is limited to the issues specified in the COA").

[11]In its response brief, the State requests that this Court sit en banc to affirm the decision of the district court and "recede completely from Walker and other prior precedent." Here we follow existing Eleventh Circuit precedent in Ferreira as best we can. Of course, nothing herein precludes the State from subsequently filing a petition for rehearing en banc in accordance with Federal Rule of Appellate Procedure 35 and Eleventh Circuit Rules 35-1 and 35-5.

25